UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHEN L. ATTERBURY,                                    **REPORT**
                                                          **and**
                              Plaintiff,          **RECOMMENDATION**
          vs.                                     ----------------------------
                                                        **DECISION**
UNITED STATES MARSHALS SERVICE                          **and**
GARY INSLEY,                                            **ORDER**[1]
JOHN DOE,
                              Defendants.          **12-CV-502A(F)**
_____


APPEARANCES:           COHEN, WEISS AND SIMON
                       Attorneys for Plaintiff
                       THOMAS N. CIANTRA,
                       TRAVIS M. MASTRODDI, of Counsel
                       330 West 42nd Street
                       New York, New York    10036

                       WILLIAM J. HOCHUL, JR.
                       UNITED STATES ATTORNEY
                       Attorney for Defendants
                       MICHAEL S. CERRONE,
                       Assistant United States Attorney, of Counsel
                       Federal Centre
                       138 Delaware Avenue
                       Buffalo, New York    14202


## JURISDICTION

This case was referred to the undersigned for all pretrial matters pursuant to 28

U.S.C. § 636(b)(1)(A) and (B) by order of Hon. Richard J. Arcara dated May 15, 2012

(Doc. No. 3).  It is presently before the court on Defendants' motion, filed January 31,

2013, to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, under Fed.R.Civ.P.

---

[1] As Defendants' motion is dispositive and Plaintiff's motion is non-dispositive, for convenience, both motions are addressed in this Report and Recommendation and Decision and Order.

56, (Doc. No. 20) ("Defendants' motion") and Plaintiff's motion, filed February 28, 2013 (Doc. No. 27) pursuant to Fed.R.Civ.P. 56(d), to defer consideration of Defendants' motion to dismiss pending discovery relating to Count II of the Complaint ("Plaintiff's Rule 56(d) motion").

## BACKGROUND

Plaintiff commenced this action by Complaint filed May 4, 2012, alleging a violation by Defendants Gary Insley and John Doe ("Insley," "John Doe," or "the individual Defendants") of Plaintiff's right to procedural due process – pre-termination and post-termination – guaranteed by the Fifth Amendment (Count I) ("Plaintiff's due process claim"), and that the direction of the United States Marshal ("USMS") to Plaintiff's employer that Plaintiff be removed from courthouse security service was arbitrary and capricious and in violation of Plaintiff's due process rights, thereby affording Plaintiff relief under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, ("APA") (Count II) ("Plaintiff's APA claim"). Plaintiff seeks damages, reinstatement and attorneys fees under both claims. In lieu of serving an answer,[2] on January 31, 2013, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment directed to Plaintiff's APA claim pursuant to Fed.R.Civ.P. 56 (Doc. No. 20) ("Defendants' motion") along with a Memorandum of Law (Doc. No. 21) ("Defendants' Memorandum"), a Statement of Undisputed Facts (Doc. No. 22) ("Defendants' Statement of Undisputed Facts"), a Declaration of Gary Insley (Doc. No.

[2] Following Plaintiff's request for an entry of default (Doc. No. 9), the parties stipulated to vacate the entry of default (Doc. No. 13) and extend Defendants' time to answer (Doc. No. 16).

23) ("Insley Declaration"), together with exhibits 1 - 8 (Doc. No. 23-1) ("Insley

Declaration Exh(s) ___"), a Declaration of Christopher Pfohl (Doc. No. 24) ("Pfohl

Declaration"), and a Declaration of Jerrold Risley (Doc. No. 25) ("Risley Declaration").

On March 8, 2013, Plaintiff filed Plaintiff's Memorandum Of Law In Opposition To

Defendants' Motion To Dismiss (Doc. No. 29) ("Plaintiff's Memorandum"), attaching a

Statement Of Facts Of Plaintiff Of [*sic*] Stephen L. Atterbury Pursuant to Local Rule

56(a)(2) (Doc. No. 29-1) ("Plaintiff's Statement of Facts"), and the Declaration of

Stephen L. Atterbury (Doc. No. 29-2) ("Atterbury Declaration"), together with exhibits A-

F (Doc. No. 29-2) ("Atterbury Declaration Exh(s). __").  Defendants filed a Reply

Memorandum of Law on April 3, 2013 (Doc. No. 32) ("Defendants' Reply

Memorandum").

By papers filed February 28, 2013, Plaintiff cross-moved, pursuant to

Fed.R.Civ.P. 56(d), to defer consideration of Defendants' motion for summary

judgment, directed to Count II of the Complaint, to permit Plaintiff to take discovery to

develop fully the record upon which Defendant USMS acted in requesting Plaintiff's

removal (Doc. No. 27) together with Plaintiff's Memorandum Of Law In Support Of

Motion To Defer Consideration Of Defendants' Motion To Dismiss Count II Of The

Complaint Under Fed.R.Civ.P. 56(d) ("Plaintiff's Rule 56(d) Memorandum"), and the

Declaration of Thomas N. Ciantra (Doc. No. 27-2) ("Ciantra Declaration").  On March

26, 2013, Defendants filed a Memorandum of Law in Opposition to Plaintiff's Rule 56(d)

motion (Doc. No. 30 ) ("Defendants' Memorandum in Opposition to Plaintiff's Rule 56(d)

motion"). On March 26, 2013, Defendants filed the Declaration of Michael S. Cerrone

(Doc. No. 31) attaching as Exhibit A ("Cerrone Declaration Exh. A" or "Exh. A") the

administrative record upon which the USMS's removal request was based (Doc. No. 31-1).  On April 5, 2013, Plaintiff filed Plaintiff's Reply Memorandum In Support Of Motion To Defer Consideration Of Defendants' Motion To Dismiss Count II Of The Complaint Under Fed.R.Civ.P. 56(d) (Doc. No. 33) ("Plaintiff's Reply Memorandum").

By order dated September 26, 2013, the court requested further briefing as regarding the viability of Plaintiff's APA claim (Doc. No. 34).  On November 18, 2013, Plaintiff filed Plaintiff's Response To September 26, 2013 Order (Doc. No. 37) ("Plaintiff's Response"); on November 22, 2013, Defendants filed a Memorandum of Law in response to the court's order (Doc. No. 38) ("Defendants' Response").  Oral argument was deemed unnecessary.  Based on the following, Defendants' motion to dismiss Plaintiff's due process claim under Count I of the Complaint as to the individual Defendants should be GRANTED; Plaintiff's APA claim (Count II) should be DISMISSED *sua sponte* for lack of subject matter jurisdiction; alternatively, Defendants' motion to dismiss Plaintiff's APA claim should be GRANTED; alternatively, Defendants' motion for summary judgment directed to Plaintiff's APA claim should be GRANTED. Plaintiff's Rule 56(d) motion should be DENIED.


## FACTS[3]

Plaintiff, Stephen L. Atterbury ("Plaintiff" or "Atterbury"), was since 2002, assigned as a Court Security Officer ("CSO") to the Kenneth B. Keating United States Courthouse located within this district ("the district") at Rochester, New York ("the

---

[3] Taken from the pleadings and papers filed in this action.

courthouse") until May 2011, when he was removed from service as a CSO at the
direction of the United States Marshal Service ("USMS") based on its determination that
Plaintiff, on February 24, 2011, had abandoned or deserted his assigned post at the
courthouse in violation of CSO Performance Standard 31 ("Performance Standard 31").
Performance Standard 31 is one of 58 specific duties and responsibilities imposed on
CSOs under the USMS's contract with Plaintiff's employer, Akal Security, Inc. ("Akal"),
pursuant to which Akal hired security personnel, *i.e.*, CSOs, to provide security services
at the courthouse ("the contract" or "the Akal contract").  Insley Declaration Exh. 1 at C-
18.  Performance Standard 31 requires CSOs "[n]ot close or desert any post prior to
scheduled closure unless directed to do so by the supervisor.  Remain at assigned post
until properly relieved or until the time post is to be secured."  *Id.* Under the contract,
Akal, as the contractor, is required to supervise and perform security services for the
USMS at the courthouse.  The contract also authorizes the USMS's contracting officer,
Insley ("the Contracting Officer" or "Insley"), to direct Akal to remove a CSO from
providing courthouse security services for a violation of the CSO Performance
Standards or when a CSO has engaged in actions "likely to compromise the security of
the court[ ]."  Insley Declaration Exh. 1 at H-3(c), (e).  The contract provides that the
"suitability" of an Akal employee to "serve as a CSO" is reserved to the USMS and that
the final decision to retain a CSO for courthouse security service is made "solely" by the
USMS through the Contracting Officer and the USMS Office of Court Security.  *Id.* at H-
3(b), (c).   In a case where the USMS has requested that a CSO be removed by Akal
from security service duty at the courthouse, a written response from the CSO and a
written statement of Akal's position on the proposed removal must be provided to the

Contracting Officer for final decision within 15 days of the initial notice of removal.  *Id.*

On February 24, 2011, Plaintiff was assigned to a security post near a basement conference room in the courthouse to provide security in connection with a meeting involving a local member of Congress which had been scheduled to commence around 1:00 p.m.  Shortly after he learned from CSO Brydalski, another CSO on duty at that time, that the scheduled meeting, for reasons not disclosed in the record, had been cancelled, Plaintiff left his post at approximately 1:30 p.m., went to another area in the courthouse, the USMS operations area, and informed the Acting Lead CSO, Jerrold Risley ("Risely"), that he, Plaintiff, "was sick and was going home."  Risley Declaration ¶ 5.  Plaintiff also stated that he would not be in the following day, February 25, 2011.  *Id.* ¶ 6.  Plaintiff spoke to Risely because the Lead CSO, Martin Hughes, was on vacation at that time and not present.  *Id.* ¶ 5.   Witnesses, including Risely and CSO Becky Smith,[4] described Plaintiff as appearing "upset" and "mad," *id.*, ¶ ¶ 10-11.  Risley attempted to "discuss the situation" with Plaintiff in the CSO office located in the courthouse but Plaintiff had already signed out and exited the courthouse.  Brydalski stated Plaintiff appeared unwell prior to Plaintiff's departure from his assigned post that afternoon.  Insley Declaration Exh. 3 at 2.  Initially thinking Plaintiff was "joking," Risley, in a "jocular manner," responded "see ya" to Plaintiff as Plaintiff passed by Risley on Plaintiff's way to the CSO office to secure his firearm and equipment.   Risely Declaration ¶ ¶ 7, 8.  Realizing Plaintiff was "preparing to leave work," *id.* ¶ 9, Risely

---

[4]  The record is unclear as to whether Smith is a CSO.  *Compare* Risely Declaration ¶ 2 ("CSO Becky Smith") with Insley Declaration Exh. 3 at 2 ("I [Robert Seignious, Akal's investigator] interviewed Deputy United States Marshal . . . Rebecca Smith . . ..").

went to the CSO office to discuss the situation with Plaintiff.  *Id.* ¶ ¶ 11-13.  Risely did not aver Plaintiff appeared ill; instead, to Risely, Plaintiff seemed "agitated and annoyed," Risley Declaration ¶ 5, slamming "the door to the USMS area as he left."  *Id.* ¶ 12.  After Plaintiff left the courthouse, Risely learned Plaintiff "was upset that he had not been timely notified that a security request had been cancelled."  *Id.* ¶ 18.  USMS Senior Inspector and Protective Intelligence Investigator Christopher Pfohl ("Pfohl"), who also serves as the USMS's Facility Security Liaison at the courthouse, briefly observed Plaintiff prior to Plaintiff's departure and described Plaintiff as not appearing or sounding sick.  Pfohl Declaration ¶ 14.  Risley informed Pfohl that he had not approved sick leave for Plaintiff for that day.  *Id.* ¶ 13.  In Pfohl's opinion, Plaintiff's unapproved departure "severely compromised courthouse security" because another CSO had earlier been given approval to leave sick that same day so that Plaintiff's absence resulted in the courthouse security being severely understaffed.  *Id.* ¶ ¶ 17-18.  As a result of Plaintiff leaving the courthouse, Pfohl reported to the Acting United States Marshal for the district that Plaintiff had "abandoned his post" in violation of the contract.  *Id.* ¶ ¶ 19-20.

Upon being advised of Plaintiff's unauthorized departure, Insley, as the USMS's Contracting Officer under the contract, requested, on March 1, 2011, Akal investigate whether Plaintiff had violated Performance Standard 31.[5]  Insley Declaration ¶ ¶ 7-8.

---

[5]  Plaintiff was also investigated as to violating Akal's Time Keeping Policy (Insley Declaration Exh. 3 at 2-4) because he incorrectly recorded his time of departure from the courthouse; however, that issue was administratively resolved, and was not the ground for the USMS's removal order.  *See* Insley Declaration Exh. 2 (Insley Letter of March 1, 2011, to Janet Gunn, Akal's Vice President for Human Resources, requesting Akal investigate Plaintiff for possible violation of Performance Standard 31); Insley Declaration Exh. 5 (Akal will "issue [Plaintiff] a Letter of Instruction regarding proper time keeping procedures.").

Akal's investigator, Robert Seignious ("Seignious"), interviewed Plaintiff and other witnesses, including Pfohl, and on March 17, 2011 filed a report (Insley Declaration Exh. 3) in which Seignious found that no violation of Performance Standard 31 had occurred and that Akal therefore would not act under the contract to discipline Plaintiff. Insley Declaration ¶ 9-11.  Believing Seignious's interview of Pfohl to be deficient, conducted as Seignious was about to take an awaiting cab to the airport, the USMS, through Insley as Contracting Officer, refused to accept Seignious's findings and requested Akal reconsider its conclusion that Atterbury had not violated Performance Standard 31.  Insley Declaration ¶ 13.  On May 3, 2011, Akal affirmed its original report without addressing the USMS's earlier criticism that Seignious had failed to sufficiently interview Pfohl.  Insley Declaration ¶ 14; *id.*, Exh. 5.  By letter dated May 5, 2011 ("the May 5, 2011 Letter"), the USMS rejected Akal's further report on the matter and, as provided in the contract, requested Plaintiff be removed from service as a CSO at the courthouse.  Insley Declaration ¶ 15; Insley Declaration Exh. 1 H-3(b), (c), (e).  The USMS directed Akal to provide Plaintiff with a copy of the May 5, 2011 letter and inform Plaintiff of his requested removal from CSO service under the contract, Insley Declaration Exh. 1 H-3(d), and that Plaintiff was to submit within 15 days a written response to the USMS's request.  Insley Declaration Exh. 6.  The USMS also advised Akal that if it opposed the USMS's request, such disagreement should be treated as a dispute for resolution under the Contract Disputes Act.[6]  *Id.*

In accordance with the contract, Plaintiff provided as a written response to the

---

[6]  41 U.S.C. § 7101, *et seq.* ("the Contract Disputes Act" or "CDA").

USMS request an undated letter asserting he left the courthouse before his shift ended because of illness, and that given the reduced number of judges then on duty in the courthouse, Plaintiff's departure did not adversely affect courthouse security at that time.  Insley Declaration Exh. 7.  Plaintiff also asserted that in deciding to leave his duty station and informing Risley, as acting lead CSO, Plaintiff had followed "protocol" and "local instructions" in deciding to leave his post and depart from the courthouse.  *Id.* Plaintiff denied that Risley attempted to discuss Plaintiff's decision to leave duty with Plaintiff before Plaintiff left the courthouse.  *Id.*  On June 24, 2011, in a letter to Akal, authored by the Insley ("the June 24, 2011 Letter"), the USMS rejected Plaintiff's explanation of the events as an appeal of its removal request, and directed Plaintiff be removed from providing security service as a CSO at the courthouse under the contract.  Insley Declaration Exh. 8; Insley Declaration Exh. 1 at C-12(a); H-3(d).  In the June 24, 2001 Letter, Akal was again reminded by Insley as the Contracting Officer that any disagreement with the USMS's decision to remove Plaintiff from service as a CSO was to be treated as a contract dispute under the Contract Disputes Act.  *Id*.

## DISCUSSION

### 1.   Plaintiff's *Bivens* Action.

Plaintiff contends that Defendants' motion to dismiss Plaintiff's Fifth Amendment Due Process claim against the individual Defendants should be denied because Plaintiff has stated a claim under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*") providing a federal claim for relief.  Plaintiff's Memorandum at 13-18.  In *Bivens*, the Supreme Court recognized an implied cause of

action for damages could be maintained where federal agents violated the Fourth

Amendment. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). However, as an employee of

a federal contractor, Plaintiff has no cognizable Fifth Amendment procedural due

process claim which can be pursued as a *Bivens* action in this court. *See Pollock v.*

*Ridge*, 310 F.Supp.2d 519, 529 (W.D.N.Y. 2004) (employee of administrative service

contractor at local federal detention center under contract with former U.S. Immigration

and Naturalization Service had no *Bivens* action to assert, *inter alia*, her termination

violated a Fifth Amendment right to due process) (citing *F.D.I.C. v. Meyer*, 510 U.S.

471, 486 (1994); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d. 502, 510 (2d Cir.

1994)) (Larimer, J.) ("*Pollock*"). *See also Aryai v. Forfeiture Support Associates, LLC*,

2012 U.S. Dist. Lexis 125227, at * 59-60 (S.D.N.Y Aug. 27, 2012) (Preska, C.J.)

("*Aryai*") (employee of private contractor providing asset forfeiture services to USMS

has no cognizable First Amendment claim that may be asserted in a *Bivens* action). *Cf.*

*Navab-Safavi v. Broadcast Bd. of Governors*, 650 F.Supp.2d 40 (D.D.C. 2009) ("*Navab-*

*Safavi*") (plaintiff's First Amendment claims not based on conduct related to contract

between plaintiff's employer as a contractor to defendant federal agency for translator

services not precluded as a *Bivens* action), *aff'd on other grounds*, 637 F.3d 311

(D.C.Cir. 2011). In *Pollock*, the court held that plaintiff could assert no *Bivens* claim

based on Fifth Amendment procedural due process violations because "courts have

uniformly refused to recognize that [*Bivens*] claims lie in the context of federal

employment," *Pollock*, 310 F.Supp.2d at 529 (citing cases). Here, Plaintiff agrees, that

like the plaintiff in *Pollock*, he is not a federal employee. Plaintiff's Memorandum at 18

n. 2 ("Atterbury is not an employee of the [federal] government.").  Judicial refusal to

extend *Bivens* to claims against employees of federal agencies by federal contractor

employees is necessary as to have extended *Bivens* to plaintiff's due process claim in

*Pollock,* "would vitiate the various statutory schemes that apply to federal employment .

. . that have been carefully promulgated by Congress and 'constructed step by step,

with careful attention to conflicting policy considerations,'" *id.* at 529 (quoting *Bush v.*

*Lucas*, 462 U.S. 367, 368 (1983)).  Similarly, in *Aryai*, the court found the CDA

applicable to the contract under which plaintiff was an employee to provide asset

forfeiture services to the USMS precluding plaintiff's *Bivens* action.  *Aryai,* 2012 U.S.

Dist. Lexis 125227, at *58-59.

Plaintiff does not dispute the CDA is also applicable to Akal's contract with the

USMS under which Plaintiff was employed.  Rather, Plaintiff argues, and Defendant

does not contest, Defendants' Memorandum at 8, Plaintiff, as Akal's employee, has no

standing to challenge his removal from CSO service, as a violation of due process,

pursuant to the CDA.  Plaintiff's Memorandum at 14.  Such removal does not terminate

a CSO from employment with Akal.  Insley Declaration Exh. 5 ("this [removal] action

does not . . . prevent Mr. Atterbury from continued employment with Akal; it only

prevents him from performing service under this contract").  However, Plaintiff does not

dispute that the CDA does not bar a contractor from filing a claim on behalf of a CSO

employee involved in a contractor's dispute with the USMS's determination that a CSO

be removed.  Here, the USMS twice reminded Akal that the USMS considered the

disagreement with Akal as to whether Plaintiff should be removed under the contract as

a dispute subject to the CDA.  Insley Declaration Exh. 6 (Letter of May 5, 2011 from

Insley to Janet Gunn, Akal Vice-President Human Resources ("Janet Gunn")), rejecting

Akal's reconsideration of Akal's finding no grounds for Plaintiff's removal) ("If this

decision is unacceptable to Akal, the disagreement shall be considered a dispute for

purposes of the Contract Disputes Act.") and Insley Declaration Exh. 8 (Letter of June

24, 2011 from Insley to Janet Gunn rejecting Plaintiff's appeal of the USMS's decision

directing his removal from CSO employment under the contract) ("If this decision

remains unacceptable to Akal, the disagreement shall be considered a dispute for

purposes of the Contract Disputes Act.").[7]

Significantly, Plaintiff does not allege that the CDA is inapplicable to the

disagreement between Akal and the USMS regarding the existence of grounds as

pleaded, *i.e.*, Plaintiff's alleged violation of Performance Standard 31, Complaint ¶ 34,

for Plaintiff's removal under the contract, or that Plaintiff requested Akal to seek relief

on Plaintiff's behalf from the USMS's determination pursuant to the CDA, specifically 41

U.S.C. § 7103(a) (" § 7103(a)"), and that Akal refused to do so.  Nor does Plaintiff

allege Akal sought to submit the matter for resolution pursuant to the CDA.  Under the

CDA, Akal's claim regarding Plaintiff's eligibility to remain as a CSO under the contract

would, in the first instance, has been considered and decided by Insley as the

Contracting Officer. § 7103(d).  Assuming an adverse determination at that stage,

further review of such a decision was available through alternative dispute resolution,

41 U.S.C. § 7103(h), by applying to the USMS's agency board, 41 U.S.C. §§ 7104(a),

7105(e)(1)(D), or by an action filed with the United States Court of Federal Claims. 41

---

[7]  The record does not include a copy of the contract from which it could be determined that contract expressly states that all disputes under the contract are subject to the CDA.

U.S.C. § 7104(b)(1).  Akal could, alternatively, have sought review of an adverse

decision by the USMS's agency board by appeal to the United States Court of Appeals

for the Federal Circuit. § 7107(a)(1)(A).

The scope of issues that may be raised under the CDA, *i.e.*, a claim by a

contractor, such as Akal, includes, as relevant, "'a written demand or written assertion

by one of the contracting parties seeking, as a matter of right, . . . [payment of money]

or other relief arising under or relating to the contract.'" *Navab-Safavi,* 650 F.Supp.2d at

68 (quoting 48 C.F.R. § 2.101 and citing cases).[8]  Thus, had Akal sought review of the

USMS's decision requesting Plaintiff's removal,  as the USMS twice invited Akal to do,

at Plaintiff's request or upon its own initiative, review of the USMS's decision by the

Contracting Officer and either the USMS's agency board and the Court of Federal

Claims, or by the Federal Circuit Court of Appeals was possible.  *See Aryai*, 2012 U.S.

Dist. Lexis, 125227 at *57.  As the court in *Aryai* found, "even though Plaintiff [the

contractor's employee] is barred from invoking the CDA's review provisions there is no

indication that FSA [the contractor and plaintiff's employer] would be precluded from

doing so on plaintiff's behalf."  *Id.*  Moreover, in resolving such disputes under the CDA,

the Court of Federal Claims may also "order equitable relief for non-monetary claims

under the CDA upon which the government's contracting officer has rendered a final

decision."  *Dohse v. United States*, 2005 WL 6112658, at *3 (Fed.Cl., June 7, 2005)

(citing 28 U.S.C. § 1491(a)(2)).  Thus, in the event of a successful challenge pursuant

to the CDA, Plaintiff could have sought reinstatement as well as damages.  The

---

[8]  Under indicated otherwise, all bracketed material or underlining has been added.

availability of such an alternative remedy is a required consideration in determining whether to extend *Bivens* to an alleged federal constitutional claim arising in connection with a federal contract, *see M.E.S., Inc. v. Snell*, 712 F.3d 666, 671-72 (2d Cir. 2013) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), and citing *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009) (*en banc*)); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009), and is an important factor in guiding the exercising of judicial authority in whether to do so. *M.E.S., Inc.* 417 F.3d at 671-72; *W. Radio Servs.,* 578 F.3d at 1120. "Such an alternative remedy would raise an inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and "refrain from providing a new and freestanding remedy in damages.'" *W. Radio Servs.,* 578 F.3d at 1120 (citations omitted). *See also Arar*, 585 F.3d at 571-72 (stating *Bivens* remedy is an "extraordinary thing that should rarely if ever be applied in new contexts").

Plaintiff's contention that the court's finding in *Aryai* that the availability of remedies under the CDA which could have been invoked (and may still be invoked given the CDA's 6-year period, *see* 41 U.S.C. § 7103(a)(4)(A), within which to pursue the CDA administrative and judicial review process) as a reason to deny a *Bivens* action to Plaintiff was in error because, according to Plaintiff, "there is no indication that Congress was seeking to legislate in the CDA with respect to the rights a contractor's employee [like Plaintiff] might have against federal agents as shown . . . [in this case]," or, as Plaintiff further states, "that Congress made any policy judgment about the rights of [federal] contractor's [*sic*] employees . . .," Plaintiff's Memorandum at 17-18 (citing *Dotson v. Griesa*, 398 F.3d 156, 166-67 (2d Cir. 2005), misinterprets relevant precedent. For *Bivens* purposes, the issue is not, as Plaintiff suggests whether

14

Congress sought to legislate in the CDA regarding Plaintiff's rights to seek judicial relief against individual federal employees, the individual Defendants, for an alleged constitutional violation, but whether the relevant legislation, as to this case the CDA, provides an "alternative remedy" in which Akal's, as the federal contractor, and a CSO's, in this case Plaintiff's, dispute with the USMS's removal decision under the contract, can be resolved.  As discussed, Discussion, *supra*, at 13, the court in *Aryai* found that such potential review of Akal's disagreement with the USMS over Plaintiff's removal, if initiated by Akal on Plaintiff's behalf, at or without Plaintiff's request, was available under the CDA.  Significantly, Plaintiff neither alleges such potential for review was <u>not</u> available, nor does Plaintiff argue that Chief Judge Preska in *Aryai* erred in finding such review pursuant to the CDA  was available, a finding consistent with the USMS communications to Akal that the dispute with Akal regarding Plaintiff's removal was a CDA contract dispute, inviting Akal to seek review pursuant to the CDA.  The relevant question for *Bivens* purposes is therefore not, as Plaintiff posits, whether Congress intended in the CDA to legislate with respect to Plaintiff's rights as a federal contract employee, but whether Congress's omission in failing to provide for such relief was "'not inadvertent.'" *See M.E.S., Inc.*, 172 F.3d at 672 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

The absence of a remedy in the hands of a federal contractor's employee could well reflect Congress's judgment that creating such remedy could be unduly disruptive of the federal contractor's working relationship with a federal agency leaving the question, as the CDA does, of whether to seek potential administrative and judicial review of any dispute involving one of its employees to the sole discretion of the

15

contractor, a judgment that is neither irrational or inadvertent.  The comprehensiveness

in the CDA's scheme for addressing disputes between contractors, like Akal, and their

respective federal agency contractor, like the USMS, to a contract for services, like the

contract in this case, therefore points away from extending *Bivens* to Plaintiff's due

process claim.  *See Aryai*, 2012 U.S. Dist. Lexis 125227, at **59-60; *cf. Navab-Safavi*,

650 F.Supp.2d at 68 (plaintiff's First Amendment claim based on defendant's retaliation

against plaintiff not excludable from *Bivens* relief where plaintiff's discharge related to

conduct, plaintiff's production of a video critical of U.S. foreign policy, outside the scope

of plaintiff's work as a translator pursuant to the employer's contract with defendant

federal agency thus not adversely affecting the contractor's working relationship with

the agency under the contract).  Here, Plaintiff's claim arises directly from the contract

as Plaintiff's status as Akal's employee and his suitability for service as a CSO, as

determined by the USMS, and his subsequent removal was indisputably resulted from

Akal's and Plaintiff's performance of the contracted services to be provided to the

USMS under the contract.  *M.E.S., Inc.*, 172 F.3d 675 n. 3 (noting that, in contrast to

the circumstances presented in *Navab-Safavi*, in *M.E.S., Inc.*, plaintiff's claims "related

conclusively to the performance of its government contracts.").  As such, Plaintiff's

contention is incorrect.

Plaintiff's contention that Plaintiff's due process claim is outside the CDA's

scope, Plaintiff's Memorandum at 16 ("Atterbury is not asserting 'claims' cognizable

under the CDA." (citing Federal Acquisition Regulation 2.101, 48 C.F.R. § 2.101

defining "a claim as a "demand . . . . [for] the payment of money in a sum certain")), is

also flawed.  The CDA broadly encompasses any "<u>claim</u> by a contractor against the

Federal Government relating to a contract." § 7130 (a)(1).  Thus, where the plaintiff

asserted as a *Bivens* action in the district court a procedural due process violation by

defendant Commissioner of Social Security based on defendant's alleged unlawful

termination of plaintiff's professional services contract, plaintiff's action was dismissed

for lack of subject matter jurisdiction based on the exclusive remedies available to

plaintiff under the CDA.  *See Evers v. Astrue*, 536 F.3d 651, 659 (7th Cir. 2008).  In

*Evers*, the court found that as the "source" of plaintiff's "rights" and the "form[ ] of relief"

requested (money damages) were clearly based on plaintiff's contract, plaintiff had

alleged a claim related to plaintiff's contract which came within the exclusive prior

review of the CDA regardless of plaintiff's attempt to couch the claim as one alleging a

constitutional violation.  *Id.* at 658.  Affirming dismissal of plaintiff's *Bivens* action, the

court stated: "[plaintiff] cannot escape the precisely drawn remedial framework outlined

by the [CDA] merely by styling his complaint as one for redress of constitutional [due

process] torts and regulatory violations rather than as one for breach of contract . . .."

*Id.* (citations omitted).  Thus, regardless of whether Plaintiff has requested for his

damages a "sum certain," or for more general compensatory damages as requested in

the Complaint at 15, because the source of Plaintiff's alleged due process right is, as

Plaintiff alleges, Complaint ¶ 48, his expectation of continuing employment which could

not exist except for his employment by Akal under the contract and given that Plaintiff's

removal was based solely on the terms of the contract, regardless of Plaintiff's attempt

to label it as a *Bivens* action for a constitutional violation, Plaintiff asserts a "claim"

"relating to" a contract with the federal government bringing it within the CDA's

exclusive scope.

17

Plaintiff's further contentions, Plaintiff's Memorandum at 18, that if *Bivens* relief is not extended to Plaintiff's claim, Plaintiff is remediless, and that, if Plaintiff's claim was pleaded as a due process claim pursuant to 42 U.S.C. § 1983 ("§ 1983") against a state actor, it could be entertained, of course, begs the question.  Congress's enactment creating jurisdiction for § 1983 claims most certainly was not "inadvertent" because it implements the Fourteenth Amendment's extension of federal (and state court) jurisdiction over the conduct of state actors for federal statutory and constitutional violations.  That Congress has not chosen to enact a general cause of action, similar to § 1983, allowing individual personal claims asserting due process violations by federal employees under its Fifth Amendment authority does not avoid the court's conclusion, relying on *Pollock* and *Aryai*, that *Bivens* based jurisdiction should not be extended to Plaintiff's claim.  It does not follow from Plaintiff's argument, *viz*, if the alleged conduct is actionable as a § 1983 claim, it should be actionable against federal actors under *Bivens*, as this contention violates the issue-by-issue approach to the question of extending *Bivens* relief required by applicable Supreme Court and Second Circuit precedent.  *See, e.g., Arar*, 585 F.3d at 571-72 (*Bivens* actions should "rarely . . . be applied in new contexts.").  Additionally, the Supreme Court has held the fact, upon which Plaintiff's § 1983 argument is based, that, absent *Bivens* relief, a plaintiff is left without judicial relief, similar to that available in a § 1983 action against state actors, is no justification for extending *Bivens* to Plaintiff's putative constitutional claim.  *See Chilicky*, 487 U.S. 421-22 (the absence of statutory relief for a constitutional violation does not "necessarily imply that courts should award money damages" under *Bivens*); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("It [does] not matter . . . that 'the

18

creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed.'") (quoting *Chilicky*, 487 U.S. at 425); *see also M.E.S., Inc.* 712 F.3d at 672 ("the fact that such a remedial scheme does 'not provide complete relief for plaintiff's warrants no different conclusion.") (quoting *Lucas*, 462 U.S. at 388). As to the instant case, notwithstanding that alleged violations of a federal contract employee's putative constitutional rights will, absent extending *Bivens* relief, be unredressed, the court in *Aryai* specifically held that

> the CDA represents a comprehensive attempt to regulate the Government's conduct with respect to its contractors such that recognizing a *Bivens* action to redress violations of the constitutional rights of those contractors' employees that occur in connection with a government contract would interfere with Congress's purposeful policy judgment <u>not</u> to extend the CDA's protections to the class of individuals that includes plaintiff.

*Aryai*, 2012 U.S. Dist. Lexis 125227, at **59-60.

Significantly, this conclusion was recently endorsed by the Second Circuit. *See M.E.S., Inc.*, 712 F.3d at 669-70 (citing two sister court decisions and *Aryai* as a district court decision on the "preclusive effect of the CDA on *Bivens* claims" and stating "[w]e <u>agree</u> with these courts' analysis of the CDA, <u>as well</u> as with the district court's application of that reasoning to [plaintiff's] *Bivens* claims in this case."). Plaintiff's contention, arguing §1983-like congruence for a *Bivens* extension to the instant matter, is therefore without merit.

Moreover, the circumstances of this case point to the presence of several "'special factors counseling hesitation' before authorizing a new kind of federal litigation." *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007) (quoting *Lucas*, 462 U.S. at

378).  First, a federal contractor like Akal has no *Bivens* action for claims of its alleged

constitutional rights, *M.E.S., Inc.*, 712 F.3d at 676 (comprehensive scheme available for

contract-based disputes with federal agency precludes *Bivens* relief against individual

agency administrators for alleged violations of federal contractor's constitutional rights,

*i.e.*, free speech and substantive due process); *Evers,* 536 F.3d at 661 (CDA precludes

contractor's *Bivens* action for procedural due process violations involved in plaintiff's

termination as a contract provider of medical evaluation services) and, second, if

Plaintiff were a federal employee, his *Bivens* claim is also precluded by the Civil Service

Reform Act, 5 U.S.C. § 1101 *et seq.* ("CSRA").  *See Lucas,* 462 U.S. at 388-89 (CSRA

precludes NASA employee's First Amendment claim); *M.E.S., Inc.*, 712 F.3d at 666

("Since *Davis* [*v. Passman*, 442 U.S. 228 (1979) (extending Fifth Amendment due

process to employment discrimination claims)], the Supreme Court itself has

acknowledged that 'a *Bivens* action alleging a violation of the Due Process Clause of

the Fifth Amendment may be appropriate in some contexts, but not in others.  *FDIC v.*

*Meyers*, 510 U.S. 471, 484 n. 9 (1994)'").  *See also Dotson v. Griesa*, 398 F.3d 156,

165-67 (2d Cir. 2005) (CSRA barred probation officer's *Bivens* action against federal

court employer on plaintiff's claim that his termination violated Fifth Amendment's due

process clause).  It would therefore be highly anomalous if, as an employee of a federal

contractor, Plaintiff were permitted to litigate in a *Bivens* action his procedural due

process claim based on the Fifth Amendment where a similar constitutional claim by his

employer would be precluded.  *See Aryai,* 2012 U.S. Dist. Lexis 125227, at *52.  As the

court in *Aryai* stated: "Given that Congress has long been aware that employees of

federal contractors are barred from suing under the CDA and yet has failed to extend

the CDA's protections to cover individuals such as Plaintiff suggests that Congress has

not acted [or failed to act] inadvertently."  *Id.*  Even more anomalous is that if Plaintiff

were a federal employee his constitutional claim against individual Defendants would

also be barred *Lucas*, 462 at 388-89, yet, by accepting Plaintiff's *Bivens* claim, as a

non-federal employee, it could proceed.

In this case a third "factor," *Lucas,* 463 U.S. at 378, "counseling hesitation," *id.*,

"before devising such an implied [*Bivens*]  right of action," *W. Radio Servs.*, 578 F.3d  at

1120 presents itself which also argues against extending *Bivens* to Plaintiff's Fifth

Amendment claim.  Under its enabling legislation, the USMS is authorized to provide for

the protection of federal judges, court personnel, and witnesses, 28 U.S.C. § 566,

including the "administration and implementation of courtroom security of the federal

judiciary and protection of federal property and buildings."  28 C.F.R. § 0.111(d), (e),

and (f).  Given the deadly attacks on at least one federal courthouse and several

federal judges, it is necessary that the USMS have broad discretion in the selection of

CSOs, as contractor employees, to serve as reliable security personnel capable of

assisting the USMS in carrying out this heavy responsibility.  Accepting Plaintiff's *Bivens*

contention would require federal courts to review the adequacy of the procedures

employed by the USMS, under contracts with private services contractors, to assure

CSO compliance with performance standards established by the USMS intended to

promote court security consistent with its weighty statutory protective responsibility.

Whether the USMS's discretion in its oversight of the CSOs' work, including disputes

over CSO removal from such service, should be fettered by enforcing due process

protections as Plaintiff seeks is therefore a question more suitably addressed to Congress, rather than to the courts whose security depends on the CSOs' adherence to those standards and other requirements the USMS may impose and enforce.  *See M.E.S., Inc.*, 712 F.3d at 673-75 (noting that "Congress is in a far better position" to evaluate potential adverse impact upon the effective administration of federal programs, including the threat of personal liability to federal administrators that could deter such administrators from taking remedial action ) (quoting *Lucas*, 462 U.S. at 389 and citing cases).  *See also Benzman v. Whitman*, 523 F.3d 119, 126 (2d Cir. 2008) (recognizing "right of federal agencies to make discretionary decisions when engaged in disaster relief efforts without fear of judicial second-guessing" as counseling against extending *Bivens* action relief) (quoting *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 192-93 (2d Cir. 2008)).  Plaintiff's attempt to impose constitutional tort liability upon the individual Defendants directly implicates these valid and substantial policy concerns.

Similar to *Aryai*, a fourth factor "counseling hesitation" in deciding whether *Bivens*-based relief should be extended to Plaintiff's due process claim is present. Specifically, Plaintiff does not dispute that the under "the terms of the USMS-Akal Contract USMS retains the sole discretion . . . to determine whether a CSO has violated performance standards . . . sufficient to remove the CSO."  Complaint ¶ 13.  Plaintiff further alleges the applicable performance standard is provided for in the contract which also establishes the procedure for removal of a CSO based on its violation.  Complaint ¶ 14.  Plaintiff acknowledges that under the contract the USMS reserves the right to remove a CSO even if, as here, Akal, as the contractor, determines the CSO did not

22

violate the Performance Standard at issue.  *Id.*  The USMS's exclusive authority to do

so is also confirmed in a Collective Bargaining Agreement ("CBA") between the local

CSOs' union and Akal which specifically excludes removal of a CSO by the USMS from

the CBA's grievance procedure.  Complaint ¶ ¶ 18-20; Plaintiff's Memorandum Exh. B

at 12, 14.  Nor does the CBA's provision that CSOs shall not be "terminated without just

cause" apply where the USMS determines to remove a CSO from working under the

contract.  Complaint ¶ 19; Plaintiff's Memorandum Exh. B at 14.  In *Aryai*, the court

noted that *Bivens* is limited to "'claims for money damages against federal officers who

<u>abuse</u> <u>their</u> <u>constitutional</u> <u>authority</u>.'" *Aryai*, 2012 U.S. Dist. Lexis 125227, at *60

(quoting *Malesko*, 534 U.S. at 67) (no *Bivens* action for inmate's negligence against

private prison contractor based on contract with U.S. Bureau of Prisons to provide half-

way house).  The court therefore found no reason to extend a *Bivens* action to the

plaintiff's, a federal contractor's employee, First Amendment claim in that case because

the USMS's decision to terminate plaintiff arose not from the exercise of its

"constitutional authority," but from an exercise of the USMS's "contractual authority,"

under the contract for asset forfeiture services between the USMS and the plaintiff's

contractor in *Aryai*.  *Aryai*, 2012 U.S. Dist. Lexis 125227, at *60.  Thus in *Aryai*, the

court concluded that because plaintiff's allegations demonstrated the individual

defendants' termination of plaintiff "pursuant to his employer's, [Forfeiture Support

Associates, LLC], contractual authority under the AFSC [Asset Forfeiture Support

Contract]," did not "directly implicate [defendants'] federal authority, this case is <u>different</u>

from *Bivens* and its progeny in that it does not involve a need to deter federal actors

from abusing that authority."  *Id*. at **60-61.  Likewise, in this case, Plaintiff specifically

alleges that in requesting Plaintiff's removal, individual Defendants were exercising their authority exclusively pursuant to the terms of the contract to request Plaintiff's removal, *see, e.g.,* Complaint ¶ 12 ("under the terms of the USMS-Akal Contract . . ., USMS retains the sole discretion . . . to determine whether a CSO has violated performance standards . . . promulgated by USMS sufficient to remove the CSO from the Court Security Program."), and not pursuant to the Constitution, statute or regulation. Significantly, Plaintiff does not allege individual Defendants acted to remove Plaintiff pursuant to their constitutional, statutory or regulatory, *i.e.*, "federal," *Aryai*, 2012 U.S. Dist. Lexis 125227, at *60, authority.  As such, Plaintiff's allegations that individual Defendants, in allegedly violating Plaintiff's due process rights, exercised their authority only under the contract and not the Constitution or other legislative authority, place Plaintiff's claims outside the holding of *Bivens*, and relief under *Bivens* sought by Plaintiff is therefore not available.  *See id.*  Additionally, although Plaintiff's *Bivens* claim is brought against the individual Defendants, because the contract is with the USMS, Insley's action was, pursuant to the contract, on behalf of the USMS as an agency and party to the contract.  As such, recognizing Plaintiff's *Bivens* action would not significantly deter individual agency employees, like individual Defendants, from violating Plaintiff's putative due process rights by administering the terms of the contract, a key rationale for recognizing a *Bivens* claim.  *See Malesko*, 534 U.S. at 67-68; *Benzman*, 523 F.3d at 125 ("It is important to bear in mind that the purpose for creating a *Bivens* cause of action is to deter unconstitutional behavior by individual federal officials.") (citing *Carlson v. Green,* 446 U.S. 14, 21 (1980)).  Thus, based on Plaintiff's allegations, as well as the plenary responsibility Congress has imposed on the

USMS for the security of federal courthouses and judges, and the concomitant need to avoid undue interference with the efficient administrative performance of such an important governmental responsibility, there are several factors, presented by Plaintiff's allegations, that counsel hesitation in extending *Bivens* relief to Plaintiff's Fifth Amendment due process claim against the individual Defendants in this case.[9]

That Plaintiff recognizes the vulnerability of his *Bivens* request is apparent from Plaintiff's attempt to avoid the impact of the CDA's restraint on extending *Bivens* relief to Plaintiff's due process claim in this case by asserting that Plaintiff's claim "does not arise under or relate to Akal's contract with the [USMS] but is instead based on [Plaintiff's] relationship with the [USMS]." Plaintiff's Memorandum at 16. This contention is without support in the record. For example, the Complaint acknowledges Plaintiff was employed by Akal, Complaint ¶ 4, that Akal and the USMS contracted for security service at the courthouse, *id.* ¶ ¶ 11-12, that under the contract the USMS retained "sole discretion" to approve the hiring of a CSO to determine whether a CSO violated performance standard, *id.*, ¶ ¶ 12, 14, and the CSOs' collective bargaining agreement with Akal expressly excluded removal of a CSO at the USMS's direction from its prohibition against discipline or termination without just cause in the case of a removal or termination at the USMS's direction. *Id.* ¶ 19; Plaintiff's Memorandum Exh.

---

[9] Although some courts consider whether the availability of judicial review pursuant to the APA constitutes a special factor in extending *Bivens* to particular claims, *see, e.g., Navad-Safavi*, 650 F.Supp.2d at 69-73, given that in *M.E.S., Inc.* the Second Circuit gave no indication that APA availability was relevant to the *Bivens* issue in that case this court finds not reason to address the question. Additionally, as discuss, Discussion, *infra*, at 45-61, the APA has no application to Plaintiff's case in any event.

B at 12, 14.[10]  As noted, Discussion, *supra*, at 10-11, Plaintiff concedes he is not a

federal employee (citing Plaintiff's Memorandum at 18 n. 2).  There is, therefore, no

basis to support Plaintiff's suggestion that a CSO's "relationship," if any, with the USMS,

or, for that matter, the individual Defendants, is based on anything other than the

contract.  Simply, Plaintiff has no "relationship" with the USMS sufficient to support his

due process claim.

     Nor does Plaintiff's allegation that the USMS was Plaintiff's employer and that

Plaintiff was the "functional equivalent of a federal employee for purposes of due

process protection," Complaint ¶ 47, provide any support for Plaintiff's attempt to avoid

the conclusion that Plaintiff's status was solely that of a federal contractor's employee.

Plaintiff cites to no authority for this assertion and prevailing caselaw explicitly rejects it.

*See Bernabe v. Office of Personnel Mgmt*, 198 Fed.Appx. 961, 965 (Fed.Cir. 2006) (the

*sine qua non* for federal employee status requires an appointment by an authorized

appointing authority, rejecting the argument that Plaintiff was a "functional equivalent of

a federal employee" regardless of extent of plaintiff's supervision as a stevedore by a

company under contract with U.S. Navy for stevedore services) (citing 5 U.S.C. §

---

[10]   Article 4.  All discipline shall be subject to the grievance and arbitration procedures, except for those issues involving USMS rights under the contract between the USMS and the Company. Government directives and any claimed violation of this Agreement with results from those directives, are not subject to the grievance or arbitration procedure.  Verbal directives will be documented in accordance with company policy.  Plaintiff's Memorandum Exh. B. at 12.

     Section 8.1. No employee, after a completion of his or her probationary period, shall be disciplined or terminated without just cause.  It is agreed by the parties that in instances when the employee is removed from working under the USMS Contract by the USMS, or when the employee's authority to work as a Court Security Officer under the USMS Contract is otherwise denied or terminated by the USMS, or the Employee no longer satisfies the USMS's qualifications for his or her position, the Employee may be terminated without recourse to the procedures under the Agreement and the Company shall be held harmless from any lawsuits resulting by the employee and the Union.  Plaintiff's Memorandum Exh. B at 14.

2105(a) (" § 2105(a)")).  *See also Bevans v. Office of Pers. Mgmt.*, 900 F.2d 1558, 1561

(Fed.Cir. 1990) ("[E]mployment contracts did not make the individuals [federal]

'employees,' because they had not been appointed in the civil service.'"); *Watts v.*

*Office of Pers. Mgmt.*, 814 F.2d 1576, 1578 (Fed.Cir. 1987) ("the requirement that the

'employee' be 'appointed' excludes one whose services are retained merely by

contract.").  Plaintiff does not allege he was ever appointed to the federal civil service as

a USMS employee by a person with authority to do so as required under § 2105(a).

Plaintiff is therefore not a federal employee; Plaintiff's allegation that as a CSO he was

nonetheless the "functional equivalent" of a USMS employee is illusory.

Plaintiff's further contention that the court in *Aryai* erred in finding that the CDA

excluded federal contractor employees from its protections and that extending *Bivens* to

the constitutional claims of such employees would "interfere" with Congress's

"purposeful policy judgment," Plaintiff's Memorandum at 17 (*quoting Aryai*, 2012 U.S.

Dist. Lexis 125227 at *59), is also without merit.  *See M.E.S., Inc.*, 712 F.3d at 673

(noting that the CDA represents a comprehensive "'remedial scheme'" which

"'provide[s] fiscal and exclusive resolution of all disputes arising from government

contracts' . . . within its ambit.") (*quoting A&S Council Oil Co. v. Nader*, 56 F.3d 234,

241 (D.C. Cir. 1995), and citing cases).  Based on this finding, the Second Circuit in

*M.E.S., Inc.* stated "[plaintiff] nevertheless insists that <u>constitutional</u> <u>claims</u> <u>against</u>

<u>federal</u> <u>employees</u> <u>in</u> <u>their</u> <u>individual</u> <u>capacities</u> fall outside the purview of a statute [the

CDA] that affords relief only against the federal government itself.  Supreme Court

precedent defeats this argument."  *Id.* (citing and discussing *Lucas* and *Chilicky*).  As in

*M.E.S., Inc.* where the Second Circuit squarely held that a federal contractor, like

Plaintiff's employer Akal, may not, given the CDA's comprehensive scheme, assert a

*Bivens* claim for an alleged constitutional violation against a federal agency

administrator, like the individual Defendants, it follows that the federal contractor's

employee, like Plaintiff, also may not do so.  Plaintiff's theory that a federal contractor's

employee has such a cause of action but that his contractor employer does not would, if

accepted, create an irreconcilable anomaly uncountenanced  by Supreme Court or

Second Circuit precedent.  Plaintiff's *Bivens* claim alleging due process violations

against individual Defendants (Count I) must therefore be DISMISSED.


**2.    Qualified Immunity**.

Even assuming individual Defendants are properly considered as federal actors

who directed Plaintiff's removal under federal law, in the exercise of their statutory or

constitutional authority, and that the *Bivens* cause of action should be extended to

Plaintiff's due process claim, the individual Defendants are entitled to qualified

immunity.  "A federal executive official is entitled to invoke qualified immunity as a

defense against a *Bivens* action."  *Lombardi v. Whitman*, 485 F.3d 73, 78 (2d Cir. 2007)

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The individual Defendants are

not liable for conduct that "does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.

"Qualified immunity analysis in *Bivens* suits is the same two-step analysis applied in §

1983 suits against state actors."  *Lombardi*, 485 F.3d at 78 (citing *Wilson v. Layne*, 526

U.S. 603, 608 (1999)); *see also Camreta v. Greene*, __ U.S. __, 131 S.Ct. 2020, 2031-

32 (2011) (approving two-step decision process in deciding qualified immunity defense).

"First, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show that . . . [federal executive official's] conduct violated a constitutional right?'" *Lombardi*, 485 F.3d at 78 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Second, was the right so clearly established that a reasonable government official would have known that . . . [his or her] conduct violated a constitutional right 'in light of the specific context of the case, [and] not as a broad general proposition [?]'" *Id*. "To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right.'" *Bordeaux v. Lynch*, 958 F.Supp. 77, 86-87 (N.D.N.Y. 1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2083 (2011) (citing cases). Specifically, in assessing "whether the alleged action violated clearly established law," the "'inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Dumpson v. McGinnis*, 348 Fed.Appx. 658, 659, 2009 WL 329419, at *1 (2d Cir. Oct. 13, 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 244 (2009)). "A right may be clearly established through Supreme Court precedent or the caselaw of this circuit." *Dumpson*, 348 Fed.Appx. at 659 (citing *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990). The court thus turns to the threshold question "whether the Complaint alleges the violation of a constitutional right," *Lombardi*, 485 F.3d at 78, specifically, in this case, whether individual Defendants, particularly Insley, acting as the USMS's Contracting Officer, in requesting Akal to remove Plaintiff from security duty as a CSO at the courthouse, violated Plaintiff's right

29

to procedural due process as protected by the Due Process Clause of the Fifth Amendment.

To sustain an alleged violation of procedural due process the claim "must show that plaintiff enjoyed a protected interest and defendant's deprivation of that interest occurred without due process of law." *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001). If "protected interests are implicated," then a court must decide "what process is due." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). *See also Rosu v. City of New York,* 742 F.3d 523, 526 (2d Cir. Feb. 7, 2014) ("due process claim entails a two-part inquiry to first 'determine whether [plaintiff] was deprived of a protected interest,' and, if so, 'what process was his due.'") (quoting *Logan v. Zimmerman Brush, Co.*, 455 U.S. 422, 428 (1982)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). *See also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."); *Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001) ("The Due Process Clause does not demand that the government provide the same kind of procedures for every deprivation of a property interest.").

As relevant to the instant case, a protected interest sufficient to invoke the Due Process Clause may be based on governmental employment, *compare Cleveland Bd. of Edu. v. Loudermill*, 470 U.S. 532, 538 (1985) (employee security guard of local school board discharged for dishonesty on employment application entitled to pretermination hearing) ("*Loudermill*") with *Segal v. City of New York*, 459 F.3d 207,

211 (2d Cir. 2006) (probationary teacher hired by city school board had no "constitutionally protected property interest in her employment" and therefore had "no due process claim based on any property interest"), or where plaintiff claims a contract of employment with a governmental entity creates an expectation of continued employment.  *See, e.g., Stein v. Bd. of City of New York, Bureau of Pupil Transp.*, 792 F.2d 13, 17 (2d Cir.) *cert. denied*, 479 U.S. 984 (1986).  However, a plaintiff's subjective expectation of continued employment, "if unsupported by state law or an understanding among the parties," in a "contract," is insufficient to give rise to a protected property interest.  *Caraccilo v. Village of Seneca Falls*, 582 F.Supp.2d 390, 397, 402 (W.D.N.Y. 2008) (citing *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("To state a deprivation of property claim under the Fifth and Fourteenth Amendments, a plaintiff 'must have more than a unilateral expectation . . ..  He must instead have a legitimate claim of entitlement . . ..'" (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Here, Plaintiff concedes he is not a federal, specifically a USMS employee.  *See* Plaintiff's Memorandum at 18 n. 2 ("Atterbury is not an employee of the government.") Notwithstanding this concession, Plaintiff alleged that based on the USMS's control over the terms and conditions of a CSO's employment under the contract, the USMS was Plaintiff's employer because "[he] Atterbury was the functional equivalent of a public employee for the purposes of due process protection," Complaint ¶ 47. However, such allegation is wholly without legal foundation, *see* Discussion, *supra*, at 26-27, and is moreover,  negated by Plaintiff's further allegations that as a CSO Plaintiff was a member of the CSOs' union, the United States Court Security Officers

("USCSO"), the "exclusive collective bargaining representative for CSOs employed by Akal," Complaint ¶ 15, and Plaintiff's argument that as an Akal employee Plaintiff could not be disciplined or terminated except for just cause.  Complaint ¶ ¶ 17, 21-23, 25. More specifically, according to Plaintiff, he was at all relevant times an employee of Akal, not the USMS which was not a party to the CBA, and Plaintiff does not allege otherwise.  *See* Complaint ¶ 16 ("USCSO and Akal were . . . parties to . . .  the CBA."); Complaint ¶ 21 ("Akal employed Atterbury as a CSO."); Complaint ¶ 22 (Since September 2002 . . . Atterbury has been a member of the USCSO."); Complaint ¶ 23 ("The terms of Atterbury's employment by Akal are governed by the CBA."); Complaint ¶ 23 ("[Plaintiff] understood that Akal could not discharge him from employment unless it had just cause to do so.").

By contrast, in *Loudermill*, plaintiff had been hired by defendant school district and was therefore, under Ohio law, a "classified civil servant" protected against termination unless discharged for cause.  *Loudermill*, 470 U.S. at 535.  Here, Plaintiff does not allege any comparable status legally cognizable under applicable federal civil service law, or any other relevant statute or regulation endowing Plaintiff with the status of a public employee.  Accordingly, Plaintiff's reliance upon *Loudermill* for Plaintiff's contention that he held a reasonable expectation in continued employment provides no support for Plaintiff's claim that his protected property interest was violated by the individual Defendants in requesting Plaintiff's removal from service as a courthouse CSO. Plaintiff's Memorandum at 19-20.  As noted, Discussion, *supra*, at 31, a subjective expectation in continued employment is insufficient to establish a protected interest for due process purposes.  Plaintiff's allegation that "[t]he CSO Performance

32

Standards provided Atterbury with a legitimate expectation of continued employment in the Court Security Program, and thus a property and liberty interest in such continued employment . . .," Complaint ¶ 48, is negated by the fact that Plaintiff acknowledges the USMS's exclusive authority under the contract to determine whether a CSO violated any Performance Standard requiring the CSO's removal, Complaint ¶ ¶ 12, 14, and is thus insufficient to support a finding that Plaintiff held a protected interest in continued employment as a CSO under the contract.  Additionally, contrary to Plaintiff's allegation, the extent of USMS "control" over Plaintiff's hiring and removal, Complaint ¶ 47, provides no additional basis for Plaintiff's asserted property interest.  Nor does Plaintiff point to any legal ground upon which employment with the federal government can exist given the unequivocal reservation to the USMS, under the contract, of the absolute authority, recognized by the CBA, to direct removal of a CSO for violation of a Performance Standard as solely determined by the USMS.   As discussed, Discussion, *supra* at 26-27, under established federal law there is no such thing as a "functional equivalent of [federal] employment" based on a federal agency's control or even supervision of a federal contractor employee like Plaintiff as Plaintiff alleges – either a person is a duly appointed employee or they are not.  *See Bernabe*, 198 Fed.Appx. at 964-65 (citing *Bevans*, 900 F.2d at 1561; and *Watts*, 814 F.2d at 1578).  Thus, even assuming the truth of Plaintiff's allegations regarding Plaintiff's supposed employment relationship with the USMS, Plaintiff's alleged violation of his right to procedural due process cannot be predicated on the proposition that Plaintiff, as alleged, enjoyed a protected property right based on federal employment, either as an employee in fact, or as a "functional equivalent" thereof, of the USMS.

Additionally, Plaintiff's reliance on the assertion that Plaintiff had a "reasonable expectation of continued employment" as a CSO because the CBA protected Plaintiff as an Akal employee from discipline or termination without just cause, Complaint ¶ 48, is also insufficient upon which to predicate Plaintiff's due process claim as Plaintiff does not allege the USMS was a party to the CBA (which it indisputedly was not), acknowledges that the USMS retained the "sole discretion" to remove a CSO where it determined a CSO violated a Performance Standard, Complaint ¶ 12, even where Akal determined otherwise, Complaint ¶ 14, and further acknowledges that the "just cause" protection to a CSO afforded by the CBA did not apply in the case of such removal. Complaint ¶ 19 ("the termination of a CSO resulting from the USMS' [*sic*] removal of the individual from the Court Security Program is not subject to the contractual grievance process [of the CBA]'). As such, the CBA provides no basis for Plaintiff's allegations that he was a party to a contract creating a reasonable expectation of continued employment as a CSO at the courthouse. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 314, 317-18 (2d Cir. 2002) (a collective bargaining agreement ("CBA") may provide protected property interest in continued employment where employment benefit at issue – promotion – is provided for and protected by the CBA). In contrast, in this case, the CBA specifically excludes any interest by a CSO in continued employment, *i.e.*, the employment benefit at issue, where removal is initiated by the USMS pursuant to the contract. *See* Atterbury Declaration Exh. B at 12 (Art. 4 Government Authority); (Art. 8 Discipline), Sec. 8.1.[11]   That Plaintiff does not allege he attempted to file a

---

[11] *See* Discussion, *supra*, at 26, n. 10.

grievance in connection with his removal under the CBA, or requested the assistance of

the USCSO to pursuant arbitration of the removal under the CBA, further demonstrates

that the CBA affords no protection with respect to his removal.  In fact, as noted,

Plaintiff specifically admits "[t]he termination of a CSO resulting from the USMS's

removal of the individual from the Court Security Program is not subject to the

contractual grievance process [under the CBA]."  Complaint ¶ 19.  As such, Plaintiff has

no protected interest in continued employment based on the CBA subject to procedural

due process protection.

     Moreover, the Akal contract does not create a protected interest supporting

Plaintiff's entitlement to continued employment with Akal based on an employment

contract.  In *Stein*, the Second Circuit found that plaintiff's contract with the plaintiff's

employer, a company providing school bus transportation services to a local school

board, supported plaintiff's § 1983 claim of "entitlement to continued employment" and,

correspondingly, Fourteenth Amendment due process protection against defendant

school board sufficient to submit plaintiff's claim of procedural due process violations

based on his termination to the jury.  *Stein*, 792 F.2d at 16 n. 3.  In contrast, in this

case, Plaintiff alleges no similar employment contract existed between himself and

Akal, and, as discussed, Discussion, *supra*, at 23, 25, 34, the CBA specifically excludes

removal decisions of CSOs by the USMS, as occurred in this case, from its coverage

and protections.  Thus, the allegations, as pleaded by Plaintiff, do not demonstrate the

existence of a protected interest, particularly any property interest based on contract or

otherwise, to which Plaintiff's asserted due process protection can attach; to the contrary, Plaintiff's allegations negate Plaintiff enjoys any such property interest or protection.  Moreover, Plaintiff's contention that individual Defendants' duty to provide Plaintiff with a more detailed notice of the reasons for his removal based on "clearly established" Second Circuit caselaw, Plaintiff's Memorandum at 20, fails because there is no such caselaw.

As discussed, *Stein's* recognition of a protected interest based on employment contract is wholly inapplicable in this case because, unlike the facts in *Stein,* Plaintiff does not allege any contract existed between himself and Akal or the USMS, the CBA provides Plaintiff with no protection against removal at the USMS's request, Plaintiff has conceded that he is not a USMS employee, and there is no legal ground to support Plaintiff's assertion that the was a "functional" USMS employee.  Plaintiff's reliance on *Zynger v. Dep't. of Homeland Security,* 370 Fed.Appx. 253, 255 (2d Cir. 2010) ("*Zynger*"); *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) ("*Taravella*"); and *Holmes v. Town of East Lyme*, 866 F.Supp.2d 108, 129 (D.Conn. 2012) ("*Holmes*"), Plaintiff's Memorandum at 20, to support Plaintiff's contention that Plaintiff's status as a CSO hired by Akal created a property interest to which the right to procedural due process under the Fifth Amendment attached, is misplaced.  In each case, unlike the instant case, the plaintiff was an employee of a federal agency or municipality, *Zynger* (the Transportation Security Administration); *Taravella* (contract employee with defendant Town); *Holmes*, (town police officer).  Thus, while recognizing that public employment under a contract enjoys some degree of due process protection, *Taravella,* 599 F.3d at 134, the Second Circuit found the relevant contract in

that case ambiguous regarding whether plaintiff was an at-will employee and therefore granted the defendant responsible for plaintiff's discharge, qualified immunity.  Here, Plaintiff, in contrast to *Zynger*, is not a federal employee or, as in *Taravella*, a party to any employment contract with a public body, nor any contract with Akal or the USMS, and the CBA unambiguously excludes from its protections CSO removals at the behest of the USMS.  *Zynger, Taravella* and *Holmes* are therefore inapposite.

Plaintiff's citation to *Wilson v. MVM, Inc.*, 475 F.3d 166 (3d Cir. 2007) ("*Wilson*"); *Int'l Union; United Gov't. Sec. Off. v. Clark*, 706 F.Supp.2d 59 (D.D.C. 2010) ("*Clark*"); and *Leitch v. MVM, Inc.*, 538 F.Supp. 891 (E.D.Pa. 2007) ("*Leitch*"), Plaintiff's Memorandum at 21 n. 4, is equally unavailing.  In *Wilson* the court found, relying on *Stein*, plaintiffs, CSOs, enjoyed procedural due process protection against medically based discharge upon "just cause," as provided in the relevant CBA.  475 F.3d at 170. Unlike the case at bar, in *Wilson* there is no indication that CSO removals based on misconduct, as here, or medical disqualification, the specific issue in *Wilson*, were excluded from the CBA's just cause prerequisite for discharge.  Moreover, the court's reliance on *Stein* appears misplaced as in *Stein*, unlike the facts in *Wilson*, the Second Circuit held that plaintiff was protected by the generalized good cause for discharge provision in "his contract with his private employer."  *Wilson*, 475 F.3d at 177 (citing *Stein*).  In the instant case, by contrast, the CBA specifically exempts CSO removals at the USMS's direction from the CBA's good cause for discharge requirement.  Thus, it is unclear exactly on what factor the court in *Wilson* predicated its finding that there existed, in that case, a "private employment contract" which "created a constitutionally protected property interest."  *Id.* at 178.  Additionally, while the court noted plaintiffs had

asserted their due process claim pursuant to 42 U.S.C. § 1983, *Wilson*, 475 F.3d at
176, a cause of action inapplicable to a claim of constitutional violations against federal
officials absent evidence of connivance with state actors, *see Beechwood Restorative
Care Center v. Leeds*, 436 F.3d 147, 154 (2d Cir. 2006) ("federal actor may be subject
to Section 1983 liability where there is evidence that the federal actor was engaged in a
'conspiracy' with state defendants.") (citing *Kletschka v. Driver*, 411 F.2d 436, 448-49
(2d Cir. 1969)), the court did not address whether plaintiffs' claim could proceed under
*Bivens*, as Plaintiff alleges in this case.  Accordingly, *Wilson* is distinguishable and the
undersigned, for the reasons mentioned, respectfully declines to follow the Third
Circuit's analysis in *Wilson* on the issue of whether Plaintiff has pleaded a protected
property interest.[12]

     In *Clark*, while acknowledging the relevant CBA, as in the present case, excluded
from its just cause protection USMS removals of a CSO, *Clark*, 706 F.Supp.2d at 61 n.
2 ("Just cause shall <u>include</u> any action or order of removal of an employee from working
under the contract [with Akal, the Plaintiff CSO's employer].”), the court nevertheless
found, based on the existence of the CBA and other labor-management agreements in
that case, that plaintiff retained a residual property interest in continued employment
sufficient to support plaintiff's claimed due process protection, "subject to the
limitations" of the CBA.  *Clark*, 706 F.Supp.2d at 67.  Because this conclusion conflicts
with the Second Circuit's requirement that to provide a basis for a due process claim a
CBA must actually extend protection against the challenged termination, *see Walker v.*

---

[12]   *See Schweizer v. Trans Union Corp.,* 136 F.3d 233, 237 (2d Cir. 1998) ("The district court
properly considered itself not bound by [ ], a case from another circuit.").

*City of Waterbury,* 361 Fed.Appx. 163, 166 (2d Cir. Jan. 13, 2010 (observing no due process violation where CBA denying firefighter's vested pension benefits was not arbitrary, outrageous, or conscience-shocking); *Ciambriello*, 292 F.3d at 317-18 (CBA may create protected interest if benefit at issue is protected by CBA), *Clark* is also inapposite, and therefore will not be followed in this case.  As *Leitch*, 538 F.Supp.2d at 897, held, based on *Wilson*, the plaintiff CSO possessed a protected property interest, for the same reasons stated as to *Wilson*, Discussion*, supra*, at 37-38, *Leitch* is also inapposite, and will not be followed on the issue as to whether Plaintiff has demonstrated a sufficient protected property interest as a predicate for Plaintiff's due process claim.  As such, Plaintiff has not plausibly, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("'only a complaint that states a plausible claim for relief survives a motion to dismiss . . ..'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), alleged an underlying property interest as a required predicate for Plaintiff's due process claim, *cf. Cancel v. New York City Human Resources Administration/Department of Social Services*, 527 Fed.Appx. 42, 44-45 (2d Cir. May 23, 2013) (sustaining complaint alleging defendant violated written contract for employment, giving rise to property interest, supports plaintiff's due process claim), and individual Defendants are entitled to qualified immunity even if a *Bivens* action for Plaintiff's due process claim was approved.  *See Lombardi*, 485 F.3d at 78; *see also Custodio v. Parker,* 65 F.3d 178, 1995 WL 523123, at  *2 (10th Cir. 1995) (table) (physician's services contract with the U.S. Army hospital terminable at "convenience" of government, equivalent to at-will employment, created no protected property interest to support plaintiff's alleged due process violations).

Further, even if Plaintiff's allegation that because of the extent of control exercised by the USMS over the CSO security functions, including hiring, supervision, and removal under the Akal contract, colorably established Plaintiff had a protected property interest or that Plaintiff was a functional USMS employee affording due process protection against arbitrary removal, Plaintiff points to no Supreme Court or Second Circuit caselaw clearly supporting such propositions when individual Defendants requested Plaintiff's removal.  As such, Plaintiff's right to due process can hardly be said to have been clearly established as required to defeat qualified immunity under the circumstances presented here.  *See Dumpson*, 348 Fed.Appx. at 659.  Thus, even further assuming the process used by individual Defendants afforded Plaintiff in accordance with the contract was, as Plaintiff alleges, arguably, because of insufficient notice and an opportunity to challenge his removal, deficient, the record does not support it was objectively unreasonable for individual Defendants to employ those procedures in removing Plaintiff as a CSO under the contract, given the dearth of sufficiently analogous Supreme Court or Second Circuit caselaw indicating Plaintiff held a protected interest in his employment with Akal which was violated by the inadequate process afforded to Plaintiff.  Accordingly, individual Defendants are qualifiedly immune from Plaintiff's claims even if *Bivens* relief were to extended to Plaintiff's Fifth Amendment Due Process Clause claim under Count I.

Alternatively, assuming Plaintiff has alleged a protected interest, the procedures followed by the individual Defendants in directing Plaintiff's removal were not clearly established to be deficient under the Due Process Clause.  More specifically, Plaintiff contends that the procedure used by individual Defendants to effect Plaintiff's removal

as a CSO was constitutionally deficient because it failed to provide Plaintiff with notice

of "the reasons" for removal or "the evidence Insley relied upon" in reaching that

determination, and failed to provide Plaintiff with a "meaningful opportunity to respond."

Plaintiff's Memorandum at 19-20. For due process purposes, the sufficiency of the

challenged procedures is determined by applying the multi-factor weighing process

established in *Mathews*.   The factors to be weighed include the nature of "the private

interest affected by the official action, the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards, and . . . the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail."   *Mathews*, 424 U.S. at 334.   Courts

recognize that where this test is applicable to claims of a violation of procedural due

process, it will be difficult to find that the due process deficiency in the particular

process challenged by a plaintiff had been clearly established.   *See Connecticut ex rel.*

*Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003); *Brewster v. Bd. of Educ.,* 149

F.3d 971, 973 (9th Cir. 1998) (citations omitted); *Viehdeffer v. Tryon*, 2012 WL 3746372,

at *7 (W.D.N.Y. Aug. 28, 2012).   As the court in *Brewster* stated

> [B]ecause procedural due process analysis essentially boils
> down to an ad hoc balancing inquiry, the law regarding
> procedural due process claims "can rarely be considered
> 'clearly established in the absence of closely corresponding
> factual and legal precedent.'"

*Brewster*, 149 F.3d at 973 (citations omitted).

Here, the record shows Plaintiff was advised that violations of the Performance

Standards could result in indefinite suspension, Plaintiff's Memorandum Exh. A; Akal's

investigator interviewed Plaintiff regarding the USMS's complaint that Plaintiff violated

Performance Standard 31, Insley Declaration Exh.  3 at 1 (indicating Plaintiff was aware

of the USMS's complaint and gave Seignious a full version of the events as Plaintiff

recalled them; Insley Declaration Exh. 3 at 1, and Exh. 7, a copy of Insley's May 5,

2011 letter to Akal stating that USMS did not concur in Akal's investigative conclusions,

specifically, that Plaintiff had, on February 24, 2011, violated Performance Standard 31,

which included a request to provide Plaintiff with a copy of the letter pursuant to the

contract ("Insley's May 5, 2011 Letter"), was provided to Plaintiff, Insley Declaration ¶

16; Plaintiff acknowledged receipt of Insley's May 5, 2011 Letter, *id.*; Insley Declaration

Exh. 7 at 1 ("I hereby exercise my option to appeal the decision to remove me . . . as

stated in the . . . correspondence dated May 5th, 2011," and provided a written

statement disputing he had violated Performance Standard 31, explaining Plaintiff's

version of the scenario leading to his decision to leave the courthouse on February 24,

2011.  *Id.*

        In *Viehdeffer*, plaintiff, a detention officer employed by a contractor with the U.S.

Immigration and Customs Enforcement Agency, was provided with notice of the reason

for her discharge based on plaintiff's failure to timely report an arrest, and was given an

opportunity to deny the charge and provide a description of the facts at issue.

*Viehdeffer*, 2012 WL 3746372, at *8.  Because the plaintiff could not point to any

Supreme Court or Second Circuit authority clearly establishing that under the multi-

factor analysis established by *Mathews*, she was entitled to more process than she

received, the court found qualified immunity applied to defendant's discharge of

plaintiff.  *Id.*, at *10.  *See also Wilson*, 475 F.3d at 1787-79 (finding plaintiffs' receipt of

fair notice of their medical disqualification with an opportunity to respond and provide opposing information was sufficient process under *Mathews* given the government's interest in maintaining courthouse security with qualified CSOs and that a "more rigorous process would not enhance the accuracy of the medical qualification process"); *cf. Stein*, 792 F.2d at 18 (declining to determine whether the process received by plaintiff prior to termination, *viz.*, verbal notice to appear for a hearing, and opportunity to respond to written accusations by witnesses – school bus chaperones – of plaintiff's indecent exposures and other misconduct, was sufficient to establish qualified immunity because defendant waived the defense by failing to move timely to dismiss case before trial on that ground). Plaintiff points to no Second Circuit case holding on reasonably similar facts that more procedural protection, such as Plaintiff asserts, should have been provided, was required, including an opportunity to refute Pfohl's opinion that Plaintiff's abrupt departure compromised security at the courthouse, Plaintiff's Memorandum at 6, or to challenge on what basis Pfohl concluded Plaintiff was not sick. *Id.* at 7. Nothing in *Stein*, based on materially different facts, provides clearly established procedural requirements involving removal by the USMS of a CSO as a federal contractor's employee under the circumstances presented in the case at bar. It is therefore "apparent" under *Mathews* that no additional process was required to avoid the risk of an erroneous decision that Plaintiff had no protected property interest to which the right, as asserted by Plaintiff, to such additional process, as Plaintiff requests, attached. *See Viehdeffer*, 2012 WL 3746372, at *10 ("'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the

43

unlawfulness must be apparent.'") (quoting *Anderson*, 483 U.S. at 640) (internal citation

omitted), and "'[W]hen the law requires a balancing of competing interests, it may be

unfair to charge an official with knowledge of the law in the absence of a previously

decided case with clearly analogous facts.'") (quoting *Borucki v. Ryan*, 827 F.2d 836,

848-49 (1st Cir. 1987) (citing *Davis v. Scherer*, 468 U.S. 183, 192-93 n. 10 (1984)).  As

with the court's finding in *Viehdeffer*, that it was unclear that more rigorous process was

required to assure the defendants accurately determined the plaintiff had violated an

arrest disclosure requirement as a ground for termination, *Viehdeffer*, 2012 WL

3746372, at *10, here it is similarly unclear that more specification of the grounds for

Plaintiff's removal and a greater opportunity for Plaintiff to challenge Pfohl and Risely's

recollections, as well as CSO Smith's, of the events was required.  Accordingly, clearly

established and applicable caselaw at the time of Plaintiff's removal does not support a

finding that individual Defendants acted in an objectively unreasonable manner in the

process used to remove Plaintiff as a CSO from security service at the courthouse.  In

any event, balancing that Plaintiff lacked a protected interest in continuing employment

as a CSO against the USMS's strong interest in maintaining courthouse security with

reliable CSOs and the unlikelihood that given Pfohl, Risely and Smith's unequivocal

descriptions of Plaintiff's conduct, Facts, *supra*, at 5-7, an enlarged opportunity to

challenge their descriptions, as Plaintiff requests, would have resulted in a different

determination by the USMS, *Mathews*, 424 U.S. at 334, it is reasonable to conclude

that Plaintiff received all the process that was due.  *See James v. Golden*, 1986 WL

15522, at *3 (D.D.C. Nov. 26, 1986) (without addressing whether *Bivens* action

available for plaintiff's due process claim and "[a]ssuming" plaintiff, security guard

employed by security services company under contract with GSA had property interest in continued employment, plaintiff's termination of eligibility under contract based on investigative reports by federal and local police and contractor regarding plaintiff's improper discharge of firearm including right to appeal, and request a hearing, of GSA decision to terminate plaintiff's eligibility, provided sufficient process (citing *Roth*, 408 U.S. 564 (1972)).  In this case, nothing in the Akal contract or the CBA preclude a request by Plaintiff for a hearing as part of Plaintiff's appeal to the USMS on the issue of Plaintiff's removal, *id.* and the record is silent as to whether Plaintiff requested one or may still do so.  As such, Defendants' motion to dismiss should be GRANTED on this ground even if Plaintiff's *Bivens* claim were to be allowed.


3.     **Plaintiff's APA Claim**.

       In Count II of the Complaint Plaintiff asserts Defendant USMS's action in directing, pursuant to the contract, Plaintiff's removal as a CSO violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("the APA") specifically 5 U.S.C. §706(2)(A), (B), and (D) ("§ 706__").  Under § 706 the court may hold and set aside an agency action as unlawful if it finds the action arbitrary and capricious, an abuse of discretion, or otherwise unlawful (§ 706(2)(A)), contrary to a constitutional right, power, privilege or immunity (§ 706(2)(D)), or without observance of procedure required by law (§ 706(2)(D)).  According to Plaintiff, the USMS's decision to remove Plaintiff from the CSO program under the Akal contract was arbitrary, capricious, and an abuse of discretion, and constituted a violation of Plaintiff's Fifth Amendment right to procedural due process.   Complaint ¶ ¶ 56-58.  More specifically, Plaintiff contends his removal

was without notice and an opportunity to be heard, Plaintiff's Memorandum at 22, as a

violation of Plaintiff's Fifth Amendment procedural due process right, and because the

determination of the USMS to require Plaintiff's removal from CSO service, as stated in

Insley's May 5, 2011 letter to Janet Gunn ("the May 5, 2011 Letter"), Insley Declaration

Exh. 6, "discloses no reason or evidence supporting the action taken" the USMS's

decision calling for Plaintiff's removal by Akal was arbitrary.  Plaintiff's Memorandum at

22-23.  In particular, Plaintiff argues the May 5, 2011 Letter fails to disclose any reason

for the USMS's conclusion that Plaintiff's "actions have undermined the District's

confidence and trust in [Plaintiff's] ability to effectively perform his duties as a [CSO]."

*Id.* at 23.  More particularly, Plaintiff asserts Plaintiff did not abandon his assigned post,

*viz.* courthouse security duty, because the scheduled event to which Plaintiff was

assigned had been cancelled albeit without Plaintiff's awareness until Plaintiff belatedly

learned of this fact, approximately 30 minutes after the event had been scheduled to

start at 1:00 p.m., despite Risely's radio communication advising CSOs then on duty at

the courthouse, including Plaintiff, of the cancellation sent "[a] few minutes later."

Risely Declaration ¶ 21.  Plaintiff further claims there was no abandonment of his post

because Plaintiff was ill and felt he should leave the courthouse and so informed

Plaintiff's acting CSO supervisor, Risely, who, according to Plaintiff, verbally approved

Plaintiff's departure as Plaintiff passed by Risely, while announcing his intent to leave

work.  Plaintiff's Memorandum at 23-24.  Plaintiff also complains the USMS failed to

explain why it concluded the Akal investigation, including Seignious's interview of Pfohl,

was deficient, specifically challenging Pfohl's ability to make accurate observations of

Plaintiff's physical condition and conduct while in the courthouse during the relevant

46

time period.  *Id.* at 24.

In opposition, Defendant USMS contends Plaintiff's APA claim alleging an
unconstitutional agency action, *i.e.*, a due process violation, is without merit as Plaintiff
received adequate notice and an opportunity to be heard, balancing the plaintiff's
alleged interest in employment and the government's interest in maintaining courthouse
security.  Defendants' Memorandum at 21 (citing *Wilson v. MVM, Inc.*, 475 F.3d 166,
178-79 (3d Cir. 2007); *Int'l Union, United Gov't Sec. Off. v. Clark*, 706 F.Supp.2d 59
(D.D.C. 2010) (following *Wilson*); *Leitch v. MVM, Inc.*, 538 F.Supp.2d 891, 904-05
(E.D.Pa. 2007) (following *Wilson*)).  Defendant USMS further argues that the APA's
arbitrary and capricious review standard is deferential, Defendants' Memorandum at 21
(citing *Perry v. Delaney*, 74 F.Supp.2d 824, 837 (C.D.Ill. 1999) (citing *Pozzie v. United
States Dep't of Housing and Urban Dev.*, 48 F.3d 1026, 1029 (7th Cir. 1995)).  In *Perry*,
plaintiffs, CSOs, were removed from security service at a federal courthouse based on
their alleged failure to sufficiently comply with courthouse access screening
requirements.  *Perry*, 74 F.Supp.2d at 827.  Finding the USMS requested that plaintiffs
be removed as CSOs because plaintiffs' lapses in required courthouse security
procedures were fully established by the record, the court found the USMS's decision
was not arbitrary and capricious.  *Id.* ("The arbitrary and capricious standard is very
deferential to the agency, so that when the agency can offer rational explanation for its
action, the action is not arbitrary or capricious.") (citing *Pozzie*, 48 F.3d at 1029).  Here,
based on Seignious's investigation, and the information or "data" provided by Pfohl and
Risely, and statements of other CSOs, including Smith, who witnessed the events, Exh.
A at 14, 22-23, 24-25, 41-43, 48, 78, 83, Insley, as the USMS Contracting Officer,

concluded that Plaintiff's "actions have undermined the District's [USMS's] confidence and trust in . . . [Plaintiff's] ability to effectively perform his duties as a Court Security Officer."  Insley Declaration Exh. 6.  Defendant USMS maintains that the record shows that "Plaintiff left work without permission and without any valid reason for doing so," Defendants' Memorandum at 22, leaving the courthouse security CSO complement "understaffed."  *Id.*  According to the USMS, Plaintiff's "reason for leaving – because he was upset that he was not told sooner about the cancellation of a security request [to which he had been posted] – raised significant questions about plaintiff's judgment, temperament, and suitability to work in a sensitive position such as a court security officer."  *Id.*  Based on those factors, and given the USMS's strong interest in maintaining courthouse security using CSO's, Defendant USMS contends its decision to remove Plaintiff was "clearly rational."  *Id.*  Although not addressed by the parties, Plaintiff's APA claim fails at the threshold for several reasons.[13]

First, this court lacks subject matter jurisdiction over Plaintiff's APA claim because judicial review under the APA of an agency action is excluded by the APA where such judicial review is precluded by statute, § 701(a)(1) ("APA applies . . . except to the extent that . . . [a] statute[ ] preclude[s] judicial review.").  This exception is "construed narrowly and applies only if there is "'clear and convincing evidence of legislative intention to preclude review.'"  *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Japan Whaling Ass'n v. Am.*

---

[13]  *See Defenshield, Inc. v. First Choice Armor & Equip., Inc.*, 2013 WL 5323752, at *2 (N.D.N.Y. Sept. 20, 2013) (accepting and adopting magistrate judge's report and recommendation over defendants' objections that, *inter alia*, magistrate judge *sua sponte* raised issue regarding relationship between two terms essential to resolution of patent infringement action).

*Cetacean Soc'y*, 478 U.S. 221, 230 n. 4 (1986)).  Here the CDA's comprehensive

scheme for resolution of all disputes arising in connection with, *i.e.*, "relating to" a

federal contract and the exclusion from the original jurisdiction of the district court of

any civil action against the United States which is "subject to review" under the CDA as

provided by 28 U.S.C. § 1346(a)(2), establishes clearly and convincingly Congress's

intent to withhold such contract disputes and related claims from judicial review of

agency actions assertedly available under the APA which may be brought in a district

court pursuant to § 702.  As explained, Discussion, *supra*, at 10-17, the issue whether

Plaintiff should have been removed from CSO service is one that derives solely from

the contractual relationship between Akal and the USMS as expressed in the contract

and, as such, is reviewable exclusively, pursuant to the CDA.  *See M.E.S., Inc.,* 712

F.3d at 672 ("the comprehensive procedural and substantive provisions of the CDA

afford meaningful – <u>and</u> <u>exclusive</u> – remedies against the United States.").  As

discussed, Plaintiff's claim has as its source the Akal contract, and, as such, it is

"related to" a contract with the federal government covered by the CBA.  Discussion,

*supra*, at 16-17 (quoting §7130(a)(1) and citing *Evers*, 536 F.3d at 659).  Plaintiff does

not dispute that his APA claim against the USMS, an agency of the United States, is

one against the United States.  Thus, because Plaintiff's APA claim is based on and

arises from a contract dispute, a claim "related to a [federal] contract" within the

exclusive purview of the CDA, judicial review of the USMS's removal decision pursuant

to § 706 is excluded under the APA § 701(a)(1). Allowing Plaintiff's APA claim against

the USMS would therefore be in direct conflict with the exclusive jurisdiction over such

disputes, arising as here directly from, and because of, the terms of and "related to" the

contract, lodged exclusively by the CDA in the United States Court of Federal Claims, 41 U.S.C. § 7104(b)(1) or the United States Courts of Appeals for the Federal Circuit. 41 U.S.C. § 7107(a)(1)(A).  *See M.E.S., Inc.* ("Congress expressly excluded [from district court's original jurisdiction] '<u>any</u> <u>civil</u> <u>action</u> or claim against the United States founded upon any express or implied contract with the United States' that is subject to review under the CDA.") (quoting 28 U.S.C. § 1346(a)(2) (" § 1346(a)(2)")) (bracketed material excluded in decision).  Because permitting review of Defendant USMS's removal decision, which is the gravamen of Plaintiff's APA claim, and seeks judicial review of the correctness of that contract-based decision by this court, including equitable relief and money damages remedies available in the U.S. Court of Federal Claims, 48 C.F.R. § 2.101 (money damages and other relief available); *Dohse*, 2005 WL 6112658, at *3, it contravenes Congress's comprehensive scheme for review of disputes involving contracts by federal agencies like the USMS with federal contractors like Akal, and is by the APA's own terms therefore beyond the reach of the APA and the jurisdiction of this court.  Accordingly, Plaintiff can assert, in the instant action, no claim for judicial review of his removal at the direction of the USMS, an alleged agency action, under the APA.  Moreover, because Plaintiff's APA claims falls outside the purview of the APA, it is not within the APA's waiver of sovereign immunity.  *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . ., . . . will not be implied, . . . [and] will be strictly construed [as to] its scope, in favor of the sovereign.") (citations omitted); *Kletschka,* 411 F.2d at 445 (the APA "constitutes a waiver of sovereign immunity concerning those claims which come within its scope").  The required degree of strict

construction of Plaintiff's APA claim demonstrates it is exclusively within the scope of

the CDA, and thus beyond this court's jurisdiction. *See* § 1346(a)(2).   Plaintiff's APA

claim should therefore be dismissed, *sua sponte*, pursuant to Fed.R.Civ.P. 12(b)(1) as

lacking in subject matter jurisdiction. *See Durant, Nichols, Houston, Hodgson &*

*Cortese-Costa P.C. v. Dupont,* 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter

jurisdiction is lacking and no party has called the matter to the court's attention, the

court has the duty to dismiss the action *sua sponte*." (citing *Louisville & Nashville R.R.*

*v. Mottley*, 211 U.S. 149, 152 (1908))); *New York v. E.P.A.*, 350 F.Supp.2d at 429, 446

(S.D.N.Y. 2004) (under Food Quality Control Act defendant's determinations as to

pesticide residues on food were reviewable only in Court of Appeals, but not, under

APA, in district court); *Caremark Therapeutic Services v. Thompson*, 244 F.Supp.2d

224, 229 (S.D.N.Y. 2003) (no subject matter jurisdiction in district court under APA, in

action to compel HHS to reopen insurance carrier's overpayment determination,

because Social Security Act provided exclusive authority for exercising jurisdiction over

such disputes), *aff'd*, 79 Fed.Appx 494 (2d Cir. Nov. 6, 2003)).

Second, as discussed, Discussion, *supra*, at 22-25, the USMS's decision to

remove Plaintiff did not constitute an agency action involving the exercise of the

USMS's constitutional, statutory or regulatory authority, and thus subject to review

under the APA, rather it represented the exercise of the USMS's contractual authority to

remove a CSO for violation of a Performance Standard pursuant to the contract.

Plaintiff points to no statute or regulation granting to the USMS the authority to remove

Plaintiff pursuant to the contract by the USMS as Plaintiff alleges or as a matter of the

USMS's general statutory authority to provide protection to federal courts, and the

court's research reveals none.  As discussed, Discussion, *supra*, at 50, it is established

law that the APA represents a waiver of the United States's sovereign immunity and, as

such, is to be strictly construed in favor of the government.  *See Lane*, 518 U.S.  at 192,

*Kletschka*, 411 F.2d at 435.  As relevant, for purposes of APA judicial review pursuant

to § 706, "an agency action involves the whole or a part of an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof."  5 U.S.C. § 551(13).

Plaintiff alleges no action against Plaintiff by the USMS as "an agency rule, order,

license, sanction, relief or the equivalent or denial thereof," imposed by the USMS as a

federal agency pursuant to a statute or regulation.  *See Navab-Safavi,* 650 F.Supp.2d

at 69-70 (recognizing without resolving question of whether defendant agency's action

resulting in contract employee's termination pursuant to the contract constitutes a

reviewable agency action within scope of APA judicial review).  Given the absence of a

statute governing the "substance of plaintiff's quasi employment relationship to

defendants as a personal services contractor, even if the termination of plaintiff's

contract were a reviewable 'agency action,' the [ ] APA's judicial review mechanism,

standing alone, does not constitute a 'special factor' that would bar plaintiff's *Bivens*

action.").  *Id.* at 70.  As the USMS's decision to remove Plaintiff derives solely from the

exercise of its authority as a party to the Akal contract to request a CSO's removal from

providing security services, it constitutes the exercise of a contractual power by the

USMS, not an agency action subject to review under the APA.  Importantly, the USMS's

action did not terminate Plaintiff's employment with Akal, it excluded Plaintiff from

providing services as a CSO at the courthouse as an Akal employee.  Insley

Declaration Exh. 6.

Third, even if jurisdiction to assert Plaintiff's APA claim existed and the USMS's removal decision constitutes a reviewable agency action, judicial review under the APA is available only to "an aggrieved party, who suffers a "legal wrong because of agency action within the meaning of a relevant statute." § 702.[14]  To have standing under § 702, the person suing under the APA must assert an interest that "arguably within the zone of interests to be protected or regulated by the [relevant] statute or constitutional guarantee in question" that he or she says was violated by the agency actions at issue. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, ___ U.S. ___, 132 S.Ct. 2199, 2210 (2012) (quoting *Association of Data Processing Service Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)); *Bross v. Turnage*, 889 F.2d 1256, 1257 (2d Cir. 1989) (same).  "Judicial review of an agency action will not lie 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Bross,* 889 F.2d at 1257 (quoting *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399 (1987)).  Here, Plaintiff fails to allege any "relevant statute," § 702, under which Plaintiff claims to have an interest in avoiding removal by the USMS pursuant to a contract with a federal contractor like Akal that is "arguably within the zone of interests to be protected or regulated," created by such statute.  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians,* 132 S.Ct. at 2210 (quoting *Camp*, 397 U.S. at 153);

---

[14]  As noted, Background, *supra*, at 3, on September 26, 2013, the court invited the parties to submit further briefing as to whether Plaintiff may, under the APA, challenge his removal from service as a CSO.  In response, however, Plaintiff merely reiterated his contention that his standing under the APA was already established in *Perry*, 74 F.Supp.2d 824, 832-34, Plaintiff's Response at 2, whereas Defendants maintained only that Plaintiff's removal fails to meet the arbitrary and capricious standard necessary to reverse an agency's action.  Defendants' Response at 3.

*Bross*, 889 F.2d at 1257.  As discussed, Discussion, *supra*, at 30-36, that Plaintiff has alleged no protected interest subject to protection under the Due Process Clause of the Fifth Amendment is demonstrated by the fact that Plaintiff alleges no contractual relationship with the USMS, the CBA specifically excludes Plaintiff's removal from its protections, Plaintiff concedes he is not a federal employee, and Plaintiff's asserted status as a "functional employee" of the USMS has no basis in law.  Thus, Plaintiff has alleged the violation of no constitutional right by the USMS that may be subject to judicial review under § 706.  As such, Plaintiff's reliance on *Perry* to establish standing under § 706 is unavailing as in *Perry* the court did not consider whether plaintiffs were protected by a cognizable federal due process right as CSOs against removal from courthouse security service under a contract with the USMS.  *See Perry*, 74 F.Supp.2d at 834 (stating that defendants' contention that plaintiffs lacked standing ignored plaintiffs' due process claim), the court therefore turns to whether Plaintiff is a party aggrieved by an "agency action" under a "relevant statute," § 702, within the scope of review under the APA.

Plaintiff's status as a CSO is based on his employment by Akal to assist the USMS in meeting its "statutory obligation to provide for the security of the United States Court." *Wilson*, 475 F.3d 166, 170 (3d Cir. 2007) (citing 28 U.S.C. § 566(a) ("§ 566(a)").  Among those to whom such protection extends are judges, court officers, witnesses "and other threatened persons."  28 U.S.C. § 566(e)(1)(A).  Plaintiff is, of course, neither a federal judicial officer, court officer, court employee, a witness, juror, threatened person, or other person such as an attorney or member of the media, who regularly visit the courthouse to conduct business.  Nor does Plaintiff sue as a general

member of the public seeking to observe court proceedings open to the public. Plaintiff's only reason to be present in the courthouse is to provide contractual security services not as a beneficiary of such services. Thus, even if § 566(a) is considered, for the sake of analysis, as the relevant statute to establish Plaintiff's standing under § 702, a theory not alleged by Plaintiff, Plaintiff's interest in continued employment, the only interest Plaintiff has asserted in support of his APA claim, is not within the "zone of interests" protected or intended to be benefitted by § 566(a). By way of illustration, an attorney who regularly practices in federal court having a need to routinely access the courthouse could conceivably have standing to challenge under the APA a security-related regulation promulgated by the USMS as imposing unduly restrictive clearance procedures upon working counsel. In *Bross*, plaintiff sued to compel defendant to properly evaluate his studies regarding the exposure to toxins by military personnel and revise defendant's guidelines for claims pursuant to the Veterans Dioxin and Radiation Exposure Act, 38 U.S.C. § 354, note (Supp. V 1987). Affirming dismissal of plaintiff's APA action by the district court, the court found that plaintiff's scientific interests were "not reasonably connected to awarding of VA benefits pursuant to the Act" and thus "outside the zone of interests" intended to be benefitted by the Act. *Bross,* 461 F.3d at 1257. As a federal contractor employee providing security services, the interest asserted by Plaintiff seeking reinstatement and damages pursuant to the APA based on his disagreement with the USMS's removal decision is therefore not within the "zone of interests," the USMS's courthouse security program, ostensibly provided pursuant to § 566(a), is intended to benefit or protect; alternatively, or Plaintiff's personal interest in continued CSO employment is "'so marginally related or inconsistent with the purposes

implicit in the statute that it cannot be assumed that Congress intended to permit the suit.'" *Bross*, 889 F.2d at 1257 (quoting *Clarke*, 889 F.2d at 1257).  In either case, Plaintiff lacks the degree of standing required by § 702, prerequisite to Plaintiff's APA claim. Thus, Plaintiff is without standing to pursue his APA claim for judicial review of Defendant USMS's request that Plaintiff be removed from his CSO position pursuant to the contract in that Plaintiff as a CSO is outside the scope of any constitutional or statutory protections upon which judicial review pursuant to § 702 may be predicated. Additionally, as explained, Discussion, *supra*, at 22-25, because the decision-making process leading to Plaintiff's removal springs not from any statute or regulatory authority creating the basis for Plaintiff's removal at the USMS's behest, but from the explicit provisions of the contract, the USMS's decision does not constitute an agency action reviewable under the APA.  Plaintiff has therefore not plausibly alleged an APA claim. *Up State Federal Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999) (affirming district court's decision that because the source of dispute was land lease, dispute's adjudication was matter of contract construction, not an APA challenge as alleged, and dismissing case for lack of subject matter jurisdiction under APA).  Accordingly, Defendant USMS's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be GRANTED on this ground.

Even assuming, *arguendo*, that this court has jurisdiction over Plaintiff's APA claim, that the USMS's removal decision constitutes an agency action reviewable pursuant to the APA, and that Plaintiff has APA standing under § 702 to seek judicial review, based on the record including the administrative record, Exh. A, and the parties' submissions, Defendants USMS's removal decision was not arbitrary and capricious

56

under § 706(2)(A).  "'The scope of review under the 'arbitrary and capricious' standard [of § 706(a)(2)] is narrow and a court is not to substitute its judgment for that of the agency.'"  *Public Citizen, Inc. v. Mineta*, 340 F.3d 39, 53 (2d Cir. 2003) (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983)).  In reviewing an agency's decision, the court's determination is guided by whether the decision was "'based on a consideration of the relevant fact[s] and whether there has been a clear error of judgment.'"  *Id., see also Natural Resources Defense Council, Inc. v. Muczynski*, 268 F.3d 91, 96-97 (2d Cir. 2001) (judicial review of agency action under APA's arbitrary and capricious standard is narrow, limited to examining the administrative record for a clear error of judgment).  "The arbitrary and capricious standard is very deferential to the agency, so when the agency can offer a rational explanation for its action, the action is not arbitrary and capricious."  *Perry*, 74 F.Supp.2d at 837 (citing § 706(2)(A), and *Pozzie,* 48 F.3d at 1029).  In exercising their power of review under the APA, courts avoid overruling issues of credibility determined by the agency.  *See Dan Zhu v. Holder*, 311 Fed.Appx. 435, 436-37 (2d Cir. Feb. 23, 2009) (affirming agency's adverse credibility determination where substantial evidence was in administrative record, including specific examples of inconsistent statements of alleged persecution regarding asylum applicant's claims); *Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States* , 56 Fed.Cl. 502, 510 (Fed.Cl. 2003) ("stating in context of miliary bid award protest, [t]he Court of Federal Claims does not make credibility determinations in reviewing an administrative record."); *see also United States v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 381 (2d Cir. 2001) ("court 'will not substitute assessment of a witness's credibility for that of the . . . [agency].")

(quoting *United States v. IBT ("Simpson")*, 931 F.Supp. 1074, 1096 (S.D.N.Y. 1996),

*aff'd*, 120 F.3d 341 (2d Cir. 1997)).  Here, the administrative record upon which the

decision of Defendant Insley, the USMS's Contracting Officer, was based, Exh. A;

Defendants' Rule 56(d) Memorandum at 5, n. 1 ("The USMS decision was based, in

part, on the memos and statements provided by Risely and Pfohl in 2001 during the

administrative investigation.")[15] supported a finding that Plaintiff's behavior constituted,

as found by the Acting U.S. Marshal of the District, "conduct [that] can't be tolerated" in

a CSO, and that as a result of Plaintiff's abrupt and unapproved departure, courthouse

security was "understaffed."  Exh. A at 22.  The Acting U.S. Marshal also determined

that Akal's investigation was inadequate because its investigator, Seignious, conducted

a superficial interview of Pfohl.  *Id.*  Further, the U.S. Marshal determined that CSO

Kiellach's statement supporting Plaintiff's assertion that his illness compelled him to

leave work, was provided two weeks after the Akal investigation was completed and

"did not support that [Plaintiff] was sick <u>before</u> he was observed in an agitated state."

---

[15]  A perusal of Exh. A indicates that the relevant information describing the reasons for Plaintiff's removal is fairly stated in the Risely and Pfohl Declarations submitted by Defendants in support of Defendants' motion.  Plaintiff's complaint that Defendants' belated filing of Exh. A, the Administrative Record was "unfair" to Plaintiff, Plaintiff's Rule 56(d) Reply Memorandum at 3-4, in opposing Defendant's motion is without merit. Although Plaintiff argues that Plaintiff was not provided with sufficiently specific notice, prior to his removal, as to whether he "abandoned his post" [in the basement of the courthouse], left work without permission, was malingering or some [other misconduct]," *id.* at 3, n. 3, it is reasonably clear that Defendants relied on the facts supplied primarily by Risely and Pfohl describing Plaintiff's abrupt departure from the courthouse, and not his termination of the special duty assignment in the basement conference area, as the primary reason for Plaintiff's termination.  Even if there is some arguable ambiguity as regards these interconnected actions by Plaintiff in causing Defendants' removal decision, Plaintiff's responses both to Seignious in connection with Akal's investigation and Plaintiff's statement to the USMS opposing removal, Insley Declaration Exh. 7, explaining in detail his reason for leaving work, make it abundantly clear that Plaintiff was well-aware of the relevant facts and the USMS's belief he had violated Performance Standard 31 as the reason for his removal, well before the USMS's removal action at issue and as the basis for Defendants' motion.  Nor did Plaintiff request leave to file additional briefing following receipt of Exh. A.  As such, any differences between the full content of Exh. A and the contents of the Risely and Pfohl Declarations are immaterial, and Plaintiff was not unfairly prejudiced in his ability to oppose Defendants' motion.

*Id.*  A careful reading of Kiellach's statement shows that it does not state that Plaintiff appeared to Kiellach to be sick but rather, that Plaintiff told Kiellach that he, Plaintiff, was ill.  Exh. A at 72.  Although Plaintiff encountered several CSOs prior to his departure, Brydalski, Kiellach, Smith and Risely, only Brydalski indicated that Plaintiff appeared ill before departing, Exh. A at 53, a fact considered by the USMS. Exh. A at 22.  CSO (or Deputy U.S. Marshal) Smith also encountered Plaintiff at that time but did not observe Plaintiff to be ill, and instead reported to Risely that Plaintiff appeared agitated and upset.  These conclusions were accepted by an Assistant Chief Inspector of the USMS in Washington, Exh. A at 14, as part of the USMS's consideration of Pfohl's complaint against Plaintiff, prior to the USMS decision directing Plaintiff's removal.  Based on its review of the facts as developed by the investigative file, Exh. A, it was reasonable for the USMS to conclude that prior to leaving his duty station at the courthouse Plaintiff was not sick, but rather agitated, angry, or upset that he was not promptly notified that his earlier special duty post had been cancelled, supporting the USMS determination that Plaintiff had left his assigned post, providing security services at the courthouse, without supervisory approval, as an overreaction to this slight, in violation of Performance Standard 31.  Reviewing the statements of Risely and Pfohl, as well as those from other CSOs who had observed the events, the acting U.S. Marshal for the district concluded that Plaintiff was not sick as Plaintiff had claimed but became "agitated" because he belatedly learned his special duty post had been cancelled, Plaintiff had "stormed off duty because he was upset," Exh. A at 22.  Based on these investigative results, the USMS rationally concluded that Plaintiff's assertion of sickness was therefore a pretense for his emotionally charged decision to leave work,

and that Risely did not give permission for Plaintiff's departure from the courthouse, as Plaintiff's assigned duty station.  Significantly, Plaintiff does not state that he actually requested Risely's permission to leave work.  Atterbury Declaration ¶ 12 ("I . . . told . . . Risely that I was sick and would be going home.").[16]  Given the concurrence by CSO Smith with Pfohl's opinion, Risely Declaration ¶ 11, that Plaintiff was agitated ("appeared mad") and Risely's opinion that Plaintiff's departure impaired courthouse security as well as Plaintiff's improper personal determination – one he was undoubtedly not authorized to make – that his departure would not impair security, the USMS also had sufficient reason to conclude that Plaintiff could not in the future be relied upon to assist the USMS in providing courthouse security.[17]

It was also reasonable for the USMS to credit Pfohl, Risely, Smith and the other CSOs' versions of Plaintiff's actions who, as Plaintiff's co-workers, the USMS could reasonably conclude would be unlikely to shape their descriptions to provide grounds for Plaintiff's removal and Plaintiff does not accuse these witnesses of any such bias. See Atterbury Declaration (passim).  In fact, Plaintiff averred, "I enjoyed good relations with my colleagues [and] supervisors . . ..  Atterbury Declaration ¶ 8.  Nor was it irrational for Insley to disregard CSO Brydalski's statement that, prior to his departure, Plaintiff appeared ill given the predominance of the contrary opinions. Upon the record

---

[16] Although Plaintiff claims his announced intention to leave based on his alleged illness was according to a local "protocol," Insley Declaration Exh. 7, nothing in the record indicates exactly what such protocol provided.

[17] Plaintiff's insistence that he sought and received Risely's approval of Plaintiff's announced illness as a reason to leave work abruptly also concedes the "protocol" did not allow a CSO who felt his or her need to leave work for reason of illness, to take into account the potential adverse effect of his or her sudden absence on the required level of courthouse security in deciding whether to request permission to leave work unexpectedly.

as a whole, the USMS's conclusion that Plaintiff had violated Performance Standard 31

and that Plaintiff's "actions have undermined the . . [USMS's] confidence and trust in

[Plaintiff's] ability to effectively perform his duties as a [CSO]," Insley Declaration Exh. 6,

was amply supported, showing that the USMS had considered the relevant facts, *Public*

*Citizen, Inc.*, 340 F.3d at 53, that, as such, Defendant USMS's removal decision was

not "a clear of error judgment," *id.*, and therefore not "arbitrary and capricious" under §

706(2)(A).  Accordingly, Plaintiff's APA claim should be DISMISSED *sua sponte* for lack

of subject matter jurisdiction or Defendants' motion directed to Plaintiff's APA claim for

failure to state a claim should be GRANTED; alternatively, Defendant USMS's motion

for summary judgment on Plaintiff's APA claim should be GRANTED.


**4.    Plaintiff's Rule 56(d) Motion**.

As noted, Background, *supra*, at 3, Plaintiff moves to defer consideration of

Defendants' motions directed to Count II, Plaintiff's APA Claim, pending discovery

conducted pursuant to Fed.R.Civ.P. 56(d) ("Plaintiff's Rule 56(d) motion").  Plaintiff

contends such requested discovery is necessary because whether, as Plaintiff alleges,

Defendant USMS's decision to remove Plaintiff as a CSO was arbitrary and capricious

violating § 706(2)(A) "depends on issues of fact."  Plaintiff's Rule 56(d) Memorandum at

2.  According to Plaintiff, discovery is required to enable Plaintiff to fairly oppose

Defendant USMS's motion given that the record upon which the USMS made its

decision was incomplete.  *Id.* at 5 ("Plaintiff would seek in discovery the complete

record the Marshals Service relied upon in its decision to remove Atterbury from the

Court Security Program . . ..") (citing *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201

F.3d 94, 97 (2d Cir. 2000) (holding that Rule 56(d) discovery was required where records supporting plaintiff's transfer did not address plaintiff's "core" allegation that defendant had retaliated against plaintiff based on plaintiff's protected speech).  Plaintiff also contends that Defendants failed to provide the complete record upon which the USMS based its removal decision.  Plaintiff's Rule 56(d) Memorandum at 5.

Defendants oppose Plaintiff's Rule 56(d) motion on two grounds.  First, Defendants represent that Defendants served Plaintiff on March 25, 2013 with a complete copy of all documents, comprising 80 pages, constituting the entire record of information supporting the USMS decision.  Cerrone Declaration ¶ 4 (attaching Exhibit A ("Exhibit A")). Second, Defendants contend that the record before the USMS, Exh. A, and the court supports Defendants' position that the USMS's decision was not arbitrary and capricious thereby rendering Plaintiff's discovery request unnecessary. Defendants' Memorandum at 4.  More specifically, Defendants emphasize that the USMS's decision was predicated upon its consideration of statements from witnesses to the relevant events, as reflected more completely in Exhibit A, particularly from Risely and Pfohl, obtained during the investigation prior to Plaintiff's removal, including statements of CSOs who witnessed the relevant events, Defendants' Memorandum at 5, and not based exclusively on the declarations of these two primary witnesses submitted in support of Defendants' motion, as Plaintiff had contended.  Defendants' Memorandum at 5 n. 1.

As discussed, Plaintiff's APA claim is barred by the CDA, thus depriving this court of jurisdiction over that claim.  Discussion, *supra*, at 48-50.  Moreover, the record demonstrates the USMS's decision based, as it was, on the USMS's contractual power,

62

created under the Akal contract, and not any statutory or regulatory authority, does not constitute an agency action reviewable under the APA.  Discussion, *supra*, at 51-52. Finally, even if the court had such jurisdiction, Plaintiff lacks standing under § 702 to pursue Plaintiff's APA claim.  Discussion, *supra*, at 52-56.  Thus, because Plaintiff's APA claim is not viable, any discovery by Plaintiff to supplement the Administrative Record to support Plaintiff's contention under § 702(2)(a) that Plaintiff's removal was arbitrary and capricious is unnecessary.  Assuming, however, Plaintiff's APA claim is cognizable, the discovery Plaintiff requests would be futile as the record, including Exhibit A, the Administrative Record, substantially supports a finding that Defendant USMS's determination was entirely rational, supported by the facts and was therefore neither arbitrary nor capricious.  Discussion, *supra*, at 56-61.  Additionally, because Plaintiff's discovery requests represent an attempt to attack Pfohl's credibility, a determination beyond the scope of judicial review available under the APA, Discussion, *infra*, at 64-66, Plaintiff's request lacks a basis in law.

To prevail on a Rule 56(d) motion, Plaintiff must show:  "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort [Plaintiff] has made to obtain them, and (4) why [Plaintiff] was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson*, *L.L.P.*, 321 F.3d 292, 303 (2d Cir.) *cert. denied*, 540 U.S. 823 (2003).  The decision whether to grant a Rule 56(d) motion rests within the discretion of the court.  *Thurber v. Aetna Ins. Co.*, 2012 WL 70582, at *5 (W.D.N.Y. Jan. 6, 2012) (Skretny, C.J.).  As relevant to Plaintiff's Rule 56(d) motion, the APA provides for review of agency actions that are "arbitrary, capricious, an abuse of

63

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) .  "The arbitrary and capricious standard is very deferential to the agency, so when the agency can offer a rational explanation for its action, the action is not arbitrary and capricious." *Perry* , 74 F.Supp.2d at 837 (citing 5 U.S.C. § 706(2)(A); and *Pozzie,* 48 F.3d at 1029). "Under the arbitrary and capricious standard, the Court's task is to determine 'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *Pozzie*, 48 F.3d at 1029).  Whether an agency action was arbitrary and capricious is generally limited to a review of the administrative record.  *Muczynski*, 268 F.3d at 96-97 (citing case).  As discussed, Discussion, *supra*, at 56-61, upon the record in this case, applying the applicable deferential standard of review, Defendant USMS's decision to remove Plaintiff as a CSO was neither arbitrary nor capricious. Because the record fully supports that Defendant USMS's decision to remove Plaintiff was not arbitrary and capricious Plaintiff's request based on Plaintiff's assertion that there exist "issues of fact," Plaintiff's Rule 56(d) Memorandum at 2, required additional discovery to avoid summary judgment is futile; moreover, as it seeks information requiring the court engage in unwarranted credibility determinations, *Dan Zhu*, 311 Fed.Appx. at 436-37 (court will not disturb agency's credibility determined support by administrative record); *Int'l Brotherhood of Teamsters*, 247 F.3d at 380 (in exercising APA review authority courts refrain from credibility determinations), upon which to challenge that decision, the request seeks discovery beyond the scope of review permitted under the APA.

That Plaintiff's requested Rule 56(d) discovery is intended to challenge the credibility of the witnesses upon whose statements the USMS relied is demonstrated by

Plaintiff's contentions in support of Plaintiff's Rule 56(d) motion.  Plaintiff's Reply Rule

56(D) Memorandum at 5 n. 4 (challenging Pfohl's capacity to be a credible witness to

the events).  For example, whereas Pfohl avers that he observed Plaintiff on February

24, 211, when the critical events took place, concluding Plaintiff "did not appear or

sound sick," Pfohl Declaration ¶ 14, Plaintiff argues that Pfohl's alleged observation is

without factual foundation as Plaintiff had "no interaction with Pfohl" on that day.

Atterbury Declaration ¶ 21.  Further, whereas Pfohl stated that he heard Risely tell

another CSO, Rignosky, that, after Plaintiff announced to Risely he was leaving for

work because of illness, "I can't believe he [Plaintiff] left.  I've got to write him up,"

Atterbury Declaration ¶ 31, according to Plaintiff, Risely never reported to Seignious

making such a statement, Atterbury Declaration ¶ 31, and, Plaintiff insists, Risely never

did so.  *Id.*  To conclude that in light of these countervailing assertions by Plaintiff taken

together with the discovery Plaintiff seeks, the USMS's decision to credit Pfohl's and

Risely's versions of the relevant events, specifically, that Plaintiff was not so ill that he

needed to leave at that time his assigned post at the courthouse or that Plaintiff's

asserted illness was feigned to avoid admitting he was irritated, if not angered, because

he had not been more timely notified his special security assignment had been

cancelled, or that Risely in fact did not approve Plaintiff's decision to leave duty,

constituted a "clear error of judgment," *Public Citizen, Inc.*, 340 F.3d at 53 (quoting

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto Inc. Co.,* 463 U.S. 29, 43 (1983)),

the court would be required to conduct what would amount to a *de novo* review of the

USMS's removal decision including, potentially, an evidentiary hearing, focusing on the

credibility of the witnesses, including Plaintiff, Pfohl and Risely, ultimately substituting its

65

judgment, as Plaintiff requests, for that of the USMS as to whom to believe and the weight to be given to their statements.  Such a detailed adversarial-type of review is beyond the court's limited and deferential scope of review.  As discussed, Discussion, *supra*, at 58, n. 15, Plaintiff has not been prejudiced in his ability to oppose Defendants' summary judgment motion by the lack of such discovery.

Nor does Plaintiff make a sufficient showing that the requested discovery is necessary to supplement the Administrative Record by a hearing.  *See Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 332 (2d Cir. 1977) (hearing to supplement administrative record permitted where such record does not disclose rationale underlying agency action based on *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)).  However, such a hearing is not "an open invitation to probe mental processes of the  [agency decision maker]," and requires "a strong showing of bad faith or improper behavior," and that "further explanation of administrative action by the officials involved in the decision could be by affidavit and is appropriate only when the explanation on the record is so deficient as to frustrate effective judicial review."  *Nat'l Nutritional Foods Ass'n,* 557 F.2d at 332 (further internal quotation marks and citation omitted).  Here, the record does not indicate any lack of rationale for the USMS's removal decision: Plaintiff abandoned his security post for improper reasons involving his personal pique leaving, in the informed opinion of his supervisor, the courthouse security force understaffed, particularly in the event of an emergency, demonstrating to USMS officials Plaintiff was an unreliable CSO.  There is no reason to believe that the USMS, in creating the administrative record, acted in bad faith or engaged in improper behavior, and Plaintiff suggests none.  There is therefore no grounds for Plaintiff's Rule

66

56(d) request to supplement the record through such a hearing.  Plaintiff's Rule 56(d)

motion should therefore be DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss Plaintiff's due process

claim (Count I) (Doc. No. 20) should be GRANTED; Plaintiff's APA claim (Count II)

should be DISMISSED *sua sponte* for lack of subject matter jurisdiction; alternatively,

Defendant USMS's motion to dismiss Plaintiff's APA claim (Doc. No. 20) should be

GRANTED; alternatively, Defendant USMS's summary judgment motion directed to

Plaintiff's APA claim (Doc. No. 20) should be GRANTED; Plaintiff's Rule 56(d) motion

(Doc. No. 27) is DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED as to Plaintiff's
motion (Doc. No. 27)

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: March 27, 2014
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 27, 2014
             Buffalo, New York

68