**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

STEPHEN L. ATTERBURY,

               Plaintiff,

        v.

UNITED STATES MARSHALS SERVICE;
GARY INSLEY, Contracting Officer, Office
of Security Contracts, Judicial Security Division,
United States Marshals Service, in his individual
capacity; and JOHN DOE, in his individual capacity,

               Defendants.
_____

**12-CV-502-A**
**DECISION AND ORDER**

      This case is before the Court on remand from the Second Circuit. *See Atterbury v. U.S. Marshals Service*, 805 F.3d 398 (2d Cir. 2015). The Plaintiff, a former Court Security Officer (CSO) in the federal building in Rochester, New York, alleges that the United States Marshals Service (USMS) acted arbitrarily and capriciously and denied him due process when it directed that he be removed from his position as a CSO.

      Both parties have moved for summary judgment. For the reasons stated below, the Court grants the Defendants' motion and denies the Plaintiff's motion.

## BACKGROUND

      The Court assumes familiarity with the facts of this case, which are described in detail in the Second Circuit's opinion and in this Court's prior decision. *See* 805 F.3d 398 (Second Circuit decision); 2014 WL 3392725 (Court's prior decision). As the Second Circuit noted, many of the parties' factual claims in this case "significantly differ[]." 805 F.3d at 402 n.1. Those factual differences, however, are largely irrelevant to the Court's review of the Plaintiff's remaining claim. That claim is brought under the Administrative

Procedures Act (APA), and, "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal issues." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). *See also Lacson v. U.S. DHS*, 726 F.3d 170, 171 (D.C. Cir. 2013) ("[D]etermining the facts is generally the agency's responsibility, not ours.")

The Court therefore briefly summarizes the facts in the administrative record. When doing so is necessary, the Court provides additional factual detail in its discussion of the Plaintiff's claims.

The Plaintiff was an employee of Akal Security, Inc., a company that contracts with the USMS to provide courthouse security services to courthouses in the Second Circuit. The USMS directed that Akal remove the Plaintiff from his position as a CSO after a Deputy U.S. Marshal filed a report alleging that the Plaintiff had "abandon[ed] his post" and left work several hours early. Docket No. 31-1 at 78. The Plaintiff argues that he did not "abandon" his post, and he claims that he left work early because he was ill. In contrast, the USMS disputes whether the Plaintiff was ill, and it argues that the Plaintiff "stormed off duty because he was upset" that he had not received earlier notice that an event he was to guard had been cancelled. Docket No. 31-1 at 22.

At the direction of the USMS, Akal performed an investigation and concluded that the "allegations against [the Plaintiff] were not sustained." Docket No. 31-1 at 27. The USMS, however, "d[id] not concur that [Akal's] investigation was thorough," and it asked Akal to reconsider its conclusion. *Id.* at 20. In response, Akal declined to conduct any additional interviews and "st[oo]d by its intended action." *Id.* at 16-17. The USMS "d[id]

2

not concur with Akal's reconsidered response," concluding that "Akal failed to obtain pertinent statements from USMS personnel who had first-hand knowledge of [the Plaintiff's] demeanor." *Id.* at 14. The USMS ultimately concluded that the Plaintiff's "actions . . . undermined the District's confidence and trust in [his] ability to effectively perform his duties as a Court Security Officer." *Id.* at 12. The USMS therefore directed that the Plaintiff be "permanently removed from performing under the USMS contract" with Akal. *Id.* This lawsuit followed.

In its prior Decision and Order, the Court granted the Defendants' motion to dismiss the complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On appeal, the Second Circuit affirmed this Court's decision to dismiss the Plaintiff's claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and it reversed this Court's decision to dismiss the Plaintiff's claim under the APA.

On remand, the parties filed cross-motions for summary judgment on the Plaintiff's APA claim.

**DISCUSSION**

As relevant to this case, the APA authorizes a court to "hold unlawful and set aside agency actions, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, privilege, or immunity." 5 U.S.C. § 706(2)(A)-(B).

The Plaintiff argues that he is entitled to relief under both of these provisions. Specifically, he argues that the decision to terminate him was arbitrary and capricious,

and he argues that the decision also violated the Fifth Amendment's Due Process Clause by denying him, with insufficient process, a property interest in his continued employment.

### A. Whether the USMS's decision was arbitrary and capricious

#### 1. Standard of review

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted). Thus, for example, an agency acts arbitrarily and capriciously when it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

The basis for an agency's decision must be contained in the administrative record, and a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (quotation marks omitted). But this does not mean that an agency's decision has to be a paradigm of good reasoning to survive arbitrary-and-capricious review. Rather, a court "will . . . uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (quotation marks omitted). Finally, the fact that the administrative record contains conflicting evidence is not, by itself, a sufficient reason to reverse an agency's decision. Rather, a court should not disturb an agency's resolution of factual disputes unless the agency's factual conclusions were not

supported by substantial evidence. *See Ass'n of Data Processing Serv. Organizs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984).

### 2. The USMS did not act arbitrarily or capriciously in terminating the Plaintiff

To decide whether the USMS acted arbitrarily and capriciously, the Court must evaluate the reasons the USMS gave for its decision to remove the Plaintiff from the CSO program.

The administrative record shows that the final decision to remove the Plaintiff from his position as a CSO was made by Kevin Page, Assistant Chief of the USMS's Office of Court Security.[1] *See* Docket No. 31-1 at 14 (email from Page with response to Akal's re-investigation); Docket No. 57-2 at 32 ¶ 4 (litigation document identifying Page as "the final decision maker who decided to remove plaintiff from the Court Security Officer program"). Because the reasons for the USMS's decision are central to this case, the Court quotes in full the relevant portions of the email in which Page declined to concur with Akal's recommendation to not terminate the Plaintiff:

> It is our opinion that Akal failed to obtain pertinent statements from USMS personnel who had first-hand knowledge of [the Plaintiff's] demeanor. Furthermore, although Akal reports that other CSOs said that they observed [the Plaintiff's] seemingly apparent sickness, their report indicates that only one CSO said that. All of the other CSO statements indicate that [the Plaintiff] told them that he was going home sick, none of them said that he appeared sick before his announcement to them.

> Also, [Acting Lead CSO] Risley said that [the Plaintiff] had not appeared sick before he announced that he was leaving and after being notified of the temporary post's closure. The USMS personnel present also

---

[1] The Plaintiff suggests that the USMS's decision to terminate him was unlawful because, "[t]hat Page was the sole decision-maker is inconsistent with the terms of the Akal-USMS contract," which state that "[t]he Contracting Officer and Office of Court Security shall make the final determination of [CSO] suitability." Docket No. 57-1 at 20 (quoting USMS-Akal Contract § H-3(c)). Setting aside whether Page—the Assistant Chief of the USMS's Office of Court Security—was entitled under the contract to decide to terminate the Plaintiff, the Plaintiff offers no reason why this argument is relevant to the Court's APA review.

said that [the Plaintiff] did not appear sick before being relieved from the temporary post, but did appear upset that he had not been relieved earlier. Our concern with this investigation is that Akal did not interview those USMS personnel nor did they ask questions of the other CSO, or pursue the possibility that [the Plaintiff] was upset, as reported by USMS personnel.

We also find it hard to believe that [the Plaintiff] did not realize that he was leaving at 1:30 PM as opposed to 5:00 PM. Regardless of how sick he may have been, he did not indicate that he was so delirious that he could not discern the difference in the times of his departure. Furthermore, not only does he claim that it was an inadvertent entry, he specifically wrote 5:05 PM. How could he have been so definitive about the additional 5 minutes and not be aware that he was leaving at 1:20 PM?

Lastly, we have to accept the district personnel's statements of their observations equally as much as Akal accepts those of their CSOs.

In summary, we do not concur and request that Akal be notified of our position.

Docket No. 31-1 at 14.

After Page sent his email, Gary Insley, the Contracting Officer for the Akal-USMS contract, informed Akal of the USMS's decision. In his letter to Akal, Insley wrote that, "[b]ased on a thorough review of the data provided by the contractor's investigation, and the information provided by the Western District of New York, the USMS **does not concur** with Akal's findings and proposed disciplinary strategy." Docket No. 31-1 at 12 (emphasis in original). Insley continued: "[The Plaintiff's] actions have undermined the District's confidence and trust in [his] ability to effectively perform his duties as a Court Security Officer. Effective immediately, [the Plaintiff] shall be permanently removed from performing under the USMS contract." *Id.* (emphasis omitted).[2]

---

[2] The Plaintiff complains that "[t]he Administrative Record USMS submitted does not reflect or contain any analysis by Insley or the Office of Security Contracts of the record concerning [the Plaintif's] removal." Docket No. 57-1 at 20. The record, however, shows that the USMS did what was required of it under the APA. When an agency engages in informal adjudication, the "minimal requirements" for the agency's "determination" are "set forth in the APA," *PBGC v. LTV Corp.*, 496 U.S. 633, 655 (1990), which only requires "a brief statement of the grounds for denial." 5 U.S.C. § 555(e). "[T]he core requirement" of this provision "is that the agency explain 'why it chose to do what it did.'" *Tourus Records, Inc. v. DEA*, 259

Page's decision was made after considerable back-and-forth between Akal and the USMS regarding the thoroughness of Akal's investigation. During that process, the USMS collected additional statements by USMS personnel (Docket No. 31-1 at 24-25), and it assessed the evidence that had been collected. *Id.* at 22.

In light of this record, the USMS's decision to remove the Plaintiff was not arbitrary and capricious. The USMS "examine[d] the relevant data"—that is, the investigative file compiled as a result of Akal's investigation, as well as the statements of USMS personnel in the Western District of New York. *State Farm*, 463 U.S. at 43. And based on that information, the USMS rationally concluded that the Plaintiff had left work early because he was "upset that he had not been relieved earlier." Docket No. 31-1 at 14.

The administrative record easily supports this conclusion. Jerrold Risley, the Acting Lead CSO on the day of the Plaintiff's early departure, reported that the Plaintiff told Risley that "he was sick and going home." Docket No. 31-1 at 41. At first, Risley "thought [the Plaintiff] was joking, but after a few seconds, [Risley] realized by his demeanor and tone of voice that he was upset about something." *Id.* at 41-42. Risley stopped to speak with a Deputy U.S. Marshal who had "heard [the Plaintiff's] comments and remarked . . . that [he] acts like he is mad about something." *Id.* at 42. The Plaintiff then left, "slamming the door." *Id.* Risley spoke with another CSO in the courthouse lobby, who reported that the Plaintiff "was mad because he had not been told that a marshal service request to monitor a meeting . . . had been cancelled." *Id.* And another

F.3d 731, 737 (D.C. Cir. 2001) (quoting Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 222)). Page's email and Insley's letter to Akal comply with this requirement. This is particularly true given that an agency's "brief statement" under § 555(e) "should be read in light of previous documents prepared to justify the particular decision at issue." *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1220 (10th Cir. 1997). *See also* 5 U.S.C. § 706 ("In making . . . determinations [under § 706], the court shall *review the whole record* or those parts of it cited by a party.") (Emphasis added.)

Deputy Marshal confirmed that Risley had seen the Plaintiff "le[ave] without permission, after seeming to become angry that another CSO had gone home ill earlier in the day." Docket No. 31-1 at 83.

Based on these facts, there was "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation marks omitted). The USMS rationally found that the Plaintiff left work early because he was upset, and, based on that finding, the USMS rationally concluded that the Marshals Service's "confidence and trust" in the Plaintiff's "ability to effectively perform his duties" was "undermined." Docket No. 31-1 at 12. The USMS found the Plaintiff's behavior particularly troubling because, in the USMS's view, the Plaintiff's early departure left the USMS "understaffed with CSO's [sic] which reduced [its] security," given that "another CSO had been allowed to leave sick earlier in the day." Docket No. 31-1 at 22. Based on the facts as the USMS found them, the decision to terminate the Plaintiff was an eminently rational one.

The Plaintiff responds, not by contesting whether the USMS's factual findings rationally supported its conclusion, but by arguing that the USMS's factual findings are inconsistent with the administrative record.[3] To decide whether the USMS's factual findings were arbitrary and capricious under the APA, the Court must decide whether the agency's factual findings were supported by substantial evidence. *See Ass'n of Data*

---

[3] In his reply brief, the Plaintiff does take issue with the USMS's conclusion that his early departure "severely compromised court security." Docket No. 59 at 3. The Plaintiff notes that only one judge was in the Rochester courthouse on the day the Plaintiff left work, and that judge had no scheduled proceedings. Docket No. 60 at 8-9. This argument is without merit. The USMS's judgment that a particular number of CSOs is needed to protect a courthouse is peculiarly within the USMS's expertise. *See* 28 U.S.C. § 566(a); *id.* § 566(i); Docket No. 31-1 at 25 (statement from Deputy Marshal noting that, because another CSO had left early "the remaining CSOs were less equipped to handle emergencies," and that "USMS management's concern is always that everyone is prepared and in the proper mindset to respond to a 'worst case scenario'"). Even if the record might not, to a layman, support the USMS's conclusion regarding courthouse security, that conclusion is not "so implausible that it could not be ascribed to . . . the product of agency expertise." *State Farm*, 463 U.S. at 43.

*Processing Serv. Organizs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984) (Scalia, J.) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense—*i.e.*, not enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury.") (quotation marks, ellipses, and emphasis omitted).

The substantial evidence standard is well settled. "Substantial evidence" "is more than a mere scintilla." *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 217 (1938). Rather, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Thus, "an agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of [5 U.S.C.] § 706." *Butte Cnty, Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010). *See also id.* (observing that "[t]his proposition may be deduced from case law applying the substantial evidence test, under which an agency cannot ignore evidence contradicting its position").

In arguing that the USMS acted arbitrarily and capriciously, the Plaintiff attacks Page's summary of the facts in his termination email, arguing that the email "is not entitled to deference because it mischaracterizes the record and fails to consider the record in its

totality." Docket No. 57-1 at 22. The Plaintiff identifies several ways in which, he claims, this is so.

First, the Plaintiff argues that "it is undisputed that the post [he] was assigned to was discontinued before [he] left work" and that, as a result, "there was no basis for the Marshals Service to conclude that [he] violated [a USMS] Performance Standard . . . by abandoning a post." Docket No. 57-1 at 22-23. But Page's email did not conclude that the Plaintiff "abandoned his post," nor did it conclude that the Plaintiff violated a USMS Performance Standard. To be sure, the Deputy U.S. Marshal who first reported the Plaintiff's early departure alleged that the Plaintiff abandoned his post (Docket No. 31-1 at 83), and that allegation was the focus of Akal's investigation. *Id.* at 29-32. The record shows, however, that, as the investigation developed, the USMS concluded that the Plaintiff should be terminated because he had "stormed off duty because he was upset," Docket No. 31-1 at 22—not because he had abandoned his post. The Plaintiff's first challenge to Page's email is therefore without merit.

The Plaintiff next argues that Page's email contained inaccurate factual statements because the Plaintiff "advised [the Acting Lead CSO] that he was sick and intended to leave for the day." Docket No. 57-1 at 23. Akal, the Plaintiff argues, "did not find that [the Plaintiff] acted wrongly in leaving after so advising [his superior]." *Id.* Again, however, Page's email does not rely on the fact that the Plaintiff left work without permission.

The Plaintiff next argues that a Deputy U.S. Marshal's memorandum reporting the Plaintiff's early departure "is inconsistent with the declaration [the Deputy] submitted almost two years later," in connection with this litigation. *Id.* Specifically, the Plaintiff argues that the Deputy's memorandum "nowhere states that [the Deputy] had observed

[the Plaintiff] and did not believe that he was ill," while the Deputy's declaration "so states." *Id.* Moreover, the Plaintiff argues, the Deputy's declaration shows that he was "down a hall, around a corner and approximately fifty feet away from where [the Deputy] says he heard the [Plaintiff]." *Id.*

These arguments have no merit under the APA. Inconsistencies between the Deputy's memorandum—which was part of the administrative record—and his declaration—which was not—are irrelevant, because APA review is "limited to examining the administrative record." *Citizens Against Casino Gambling in Erie Cnty. v. Chaudhuri*, 802 F.3d 267, 279 (2d Cir. 2015) (quotation marks omitted). For the same reason, the Court may not consider the Plaintiff's claim—which is based on his own declaration submitted in connection with this litigation—that the Deputy was too far away from the Plaintiff to accurately report the Plaintiff's actions.

The Plaintiff's final argument is that Page's email incorrectly concludes that "only one CSO" said that he observed "[the Plaintiff's] seemingly apparent sickness." Docket No. 57-1 at 21. The Plaintiff argues that "[t]his is wrong" because "[t]he record contains statements from two CSOs that [the Plaintiff] appeared ill to them before he left work." *Id.* Likewise, the Plaintiff notes, Page's email states that the Plaintiff's supervisor "said that [the Plaintiff] had not appeared sick before he announced that he was leaving." Docket No. 57-1 at 22 (quoting Docket No. 31-1 at 14). The Plaintiff argues that Page's statement is inconsistent with the record because the Plaintiff's supervisor "signed two statements concerning the events of [the day the Plaintiff left work]," and "[i]n neither statement does [the Plaintiff's supervisor] state that [the Plaintiff] did not appear sick to him." *Id.*

This is the Plaintiff's strongest argument that the USMS's factual findings were arbitrary and capricious. As noted, an agency's factual finding may be arbitrary and capricious where, among other things, the agency "offered an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43. Page's incorrect summary of the evidence undercuts the Plaintiff's contention that he was ill, and it could therefore have left a decisionmaker with the belief that the Plaintiff's claim was a lie intended to allow him to leave early.

Page's incorrect summary of the evidence regarding the Plaintiff's illness makes this a closer case than it otherwise would have been. But after careful review of the administrative record, the Court concludes that, despite the factual errors in Page's email, the USMS's decision to terminate the Plaintiff was not arbitrary and capricious.

The administrative record shows that the USMS's decision to terminate the Plaintiff was *not* ultimately based on the conclusion that the Plaintiff lied about being ill. It was, instead, grounded in the conclusion that, as the then-Acting U.S. Marshal put it, the Plaintiff "stormed off duty because he was upset" that he had not received earlier notification that his post had been cancelled. Docket No. 31-1 at 22. *See also id.* (noting that "[t]he facts are clear" that the Plaintiff did so).

The USMS's factual conclusion that the Plaintiff "stormed off duty" because he was angry is fully supported by the administrative record. Page's email notes that USMS personnel stated that the Plaintiff did not appear to be sick, but he "did appear upset that he had not been relieved earlier." *Id.* at 14. And Page noted—as the Acting U.S. Marshal had, one week earlier, *id.* at 22—that Akal's investigator had failed to "pursue the possibility that [the Plaintiff] was upset." *Id.* at 14. *See also id.* at 14 (statement from

Page that "[i]t is our opinion that Akal failed to obtain pertinent statements from USMS personnel who had first-hand knowledge of [the Plaintiff's] demeanor"); *id.* at 22 (Acting U.S. Marshal noting that "I believe the facts of the investigation show that [the Plaintiff] was observed expressing his agitation with inadvertently not being relieved from a post that had been discontinued").

Thus, Page's incorrect statement of the evidence concerning the Plaintiff's illness did not affect the USMS's decision to terminate the Plaintiff. "In administrative law, as in federal civil and criminal litigation, there is a harmless error rule: § 706 of the Administrative Procedures Act, 5 U.S.C. § 706, instructs reviewing courts to take 'due account . . . of the rule of prejudicial error.' If the agency's mistake did not affect the outcome, if it did not prejudice the [plaintiff], it would be senseless to vacate and remand for reconsideration." *PDK Labs. Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). Applying the APA's harmless-error rule here, the Court concludes that the USMS did not act arbitrarily and capriciously in directing that the Plaintiff be removed from the CSO program.

Finally, there is no merit under the APA to the Plaintiff's arguments that the USMS's fact-finding would have been improved had it held a hearing or provided more procedural protections. *See, e.g.* Docket No. 57-1 at 23-24 ("[T]he facts concerning [the Deputy's] ability or inability to observe what happened when [the Plaintiff] left work . . . should have been the subject of a hearing where [the Deputy] could have been questioned concerning the omissions in his earlier statement.") When an agency engages in informal adjudication, as the USMS did in this case, a failure to provide various procedural protections "where the Due Process Clause itself does not require them . . . is . . . not

unlawful." *LTV Corp.*, 496 U.S. at 655-56.  To the contrary, "courts are without power to impose procedures on agencies that are not mandated by the [APA] or by other statute or regulation.  Administrative decisions may be set aside 'only for substantial procedural or substantive reasons as mandated by the statute.'"  *Guitard v. U.S. Sec. of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) (quoting *Vt. Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 558 (1978)) (brackets in *Guitard* omitted).

The Plaintiff's arbitrary-and-capricious challenge amounts to a claim that the Court should engage in *de novo* review of the USMS's decision to terminate him.  But that is not what the APA permits the Court to do.  The Court's authority is limited to examining whether the administrative record provides a rational basis for the USMS's decision to terminate the Plaintiff.  For the reasons stated above, the Court concludes that the administrative record rationally supports the USMS's decision to remove the Plaintiff from the CSO program.  Thus, the Plaintiff has not shown that the USMS acted arbitrarily and capriciously under the APA.

### B.  Whether the USMS violated the Plaintiff's right to due process

To decide whether the Plaintiff was denied due process when he was terminated, the Court must first "determine whether the challenged . . . action infringed a protected constitutional right which plaintiff had.  If the interest []he asserts is not of a constitutional dimension, i.e., not a protected property or liberty interest, then h[is] arguments must fail." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 628-29 (2d Cir. 1996). "In general, the nature and contours of a specific property interest are defined by some source independent of the Constitution."  *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991).

"In order to bring a claim for violation of procedural due process based on discharge from a job, a claimant must prove that he had a constitutionally protected property right in continued employment." *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007). To make that showing, "a person clearly must have more than an abstract need or desire for [a particular job]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Conversely, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).

Thus, the question in this case is whether the Plaintiff had a "legitimate claim of entitlement" to his job as a CSO. Both parties agree that the answer to that question turns on an interpretation of the collective bargaining agreement (CBA) between Akal and the union that represents the CSOs. In particular, it turns on whether, under the CBA, the Plaintiff is only subject to discharge upon a showing of "just cause." If he is—that is, if the Plaintiff can never be removed from his position except upon a showing of just cause— then he has a "legitimate claim of entitlement" to his job, and, therefore, a property interest protected by the Due Process Clause. *See, e.g.*, *Stein v. Board of City of New York, Bureau of Pupil Transport.*, 792 F.2d 13 (2d Cir. 1986). If, on the other hand, the Plaintiff can be terminated without cause, then he has no "legitimate claim of entitlement" to his job, and the Due Process Clause does not protect his employment. *See Strolberg v. USMS*, 350 F. App'x 113 (9th Cir. 2009).

To decide this question, the Court must interpret the CBA and the USMS-Akal contract.[4] The basis for the Plaintiff's claim to an entitlement in his job is § 8.1 of the CBA. That provision provides as follows:

> No employee, after completion of his or her probationary period, shall be disciplined or terminated without just cause. It is agreed by the parties that in instances where the employee is removed from working under the USMS Contract by the USMS, or when the employee's authority to work as a Court Security Office under the USMS Contract is otherwise denied or terminated by the USMS, or the Employee no longer satisfies the USMS's qualifications for his or her own position, the Employee may be terminated without recourse to the procedures under this Agreement and the Company shall be held harmless from any lawsuits resulting by the employee and the Union.

Docket No. 29-2 at 33.

The Plaintiff argues that § 8.1 "means that there must be 'just cause' to remove a CSO from the Court Security Program and that where such decision lies with the Marshals Service (as opposed to the contractor), 'just cause' can only exist where the Marshals Service can show that the CSO has violated one or more of its Performance Standards." Docket No. 57-1 at 15. This might be a reasonable interpretation if § 8.1 is read in isolation. But § 8.1's "just cause" provision must be read in the context of the CBA as a

---

[4] The Plaintiff argues that the USMS-Akal contract "is irrelevant to [his] rights" because, as the Second Circuit noted, the Plaintiff "has no rights to enforce the terms of that agreement." Docket No. 60 at 5 (citing *Atterbury*, 805 F.3d at 404). The Second Circuit, however, made that observation, not in deciding whether the Plaintiff has a property interest in his employment, but in deciding whether the Plaintiff had standing to bring a claim under the Contract Disputes Act, 41 U.S.C. § 7101, *et seq.* The question here is not whether the Plaintiff can enforce rights under the USMS-Akal contract; the question is whether, under the CBA, the Plaintiff has an entitlement to his job sufficient to trigger the protections of the Due Process Clause. That question cannot be answered without referring to the USMS-Akal contract, which the CBA explicitly references. *See Int'l Union, Security, Police, and Fire Prof'ls of Am. v. USMS*, 350 F. Supp. 2d 522, 534 (S.D.N.Y. 2004) (in terminated-CSO case, considering both the terms of the CBA and the terms of the contract between the USMS and Akal to decide whether terminated CSO had a protected property interest in his employment); *Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 706 F. Supp. 2d 59, 66 (D.D.C. 2010) ("Because both the CBAs and the judicial security contracts between USMS and the private companies set forth conditions of employment, both may be relevant in determining the scope of any property interest that may exist."), *aff'd on other grounds sub nom.*, *Barkley v. USMS ex rel. Hylton*, 766 F.3d 25 (D.C. Cir. 2014).

whole.  *See Bozetarnik v. Mahland*, 195 F.3d 77, 82 (2d Cir. 1999) ("In interpreting a collective bargaining agreement, we read the contract as a whole, and we construe individual phrases in their context, not in isolation.")  Doing so shows that, notwithstanding § 8.1, the USMS retains broad authority to remove a CSO.

Section 4 of the CBA provides that a CSO may be "discipline[d]" only "subject to the grievance and arbitration procedures, *except* for those issues involving USMS rights under the contract between the USMS and the Company." (Emphasis added).[5]  The USMS-Akal contract, in turn, states what "rights" the USMS has "under the contract between the USMS" and Akal.  It states that

> The United States Marshal Service reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO. Decisions rendered under any dispute resolution process . . . shall not be binding upon the United States Marshals Service.  Any decision to continue a Contractor employee in a CSO capacity will be made solely by the Office of Court Security on a case-by-case basis in accordance with the requirement to safeguard the federal judicial process, the Judiciary, citizens, and property as per policies and directives governing Office of Court Security operations.

USMS-Akal Contract (Docket No. 23-1) § H-3(b).

The next subsection of the USMS-Akal contract reinforces the USMS's discretion to remove a CSO.  It states that "[a]ny employee provided by [Akal] that the Contracting Officer asserts has failed to meet the performance requirements set forth in Section C,

---

[5]  In its entirety, § 4 states:

> The Company and its employees are providing a service to the United States Government, which bears responsibilities and authority for providing security to federal judicial facilities.  Therefore, employees agree to comply with any verbal or written non-disciplinary directive issued by the government. All discipline shall be subject to the grievance and arbitration procedures, except for those issues involving USMS rights under the contract between the USMS and the Company. Government directives and any claimed violation of this Agreement which results from those directives, are not subject to the grievance or arbitration procedure.  Verbal directives will be documented in accordance with company policy.

Description/Specifications/Statement of Work, may be removed from performing services under this contract." USMS-Akal Contract § H-3(c). Then, finally, the contract states that "[t]he Contracting Officer and the Office of Court Security [of the USMS] shall make the final determination of suitability." *Id.*

The CBA therefore recognizes that a CSO will, as a general rule, be disciplined "subject to the grievance and arbitration procedures," but that he may *also* be disciplined based on the USMS's determination that the CSO is no longer "suitab[le]." That latter inquiry is reserved "solely" to the USMS and is limited only by several general guideposts. If the USMS's reservation of rights in § 4 of the CBA is to have any meaning, then § 8.1's just-cause provision cannot be understood to apply to *all* CSO disciplinary actions, as the Plaintiff argues. If that were the case, then the USMS would have no "rights under the contract between the USMS and the Company" when it came to questions of discipline; the USMS would *always* be constrained by the CBA's grievance and arbitration procedures, through which a CSO could argue that he was disciplined for something less than "just cause." *See* CBA § 9.1 ("For purposes of this Agreement, a grievance shall mean a claimed violation, misinterpretation, or misapplication of a material provision of this Agreement, except as limited by Articles 4, 5, 6, and 7.")

Section 8.1 of the CBA reinforces this conclusion. It begins by stating the general rule that a CSO may not "be disciplined or terminated without just cause." But it then recognizes that there may be "instances when the employee is removed from working under the USMS Contract by the USMS." And the *only* provision in the USMS-Akal

contract that allows the USMS to remove a CSO is § H-3, which makes clear that the final decision to remove a CSO is reserved solely to the USMS.[6]

To be sure, neither the CBA nor the USMS-Akal contract explicitly state that the USMS may remove a CSO at will. The Plaintiff seizes on this omission, arguing that "the provision in the USMS-Akal contract giving USMS sole authority to determine the suitability of CSOs does not exempt removals by USMS from the CBA's 'just cause' provision." Docket No. 60 at 5 (citation omitted). This is a minimally plausible interpretation of § 8.1's "just cause" provision, but a careful review of § 8.1 in the context of the rest of the CBA and the USMS-Akal contract shows that the Plaintiff reads § 8.1's "just cause" provision too broadly.

The USMS-Akal contract vests considerable discretion in the USMS to decide what factors are relevant to a matter of CSO discipline. *See* USMS-Akal Contract § H-3(b) ("Any decision to continue a Contractor employee in a CSO capacity will be made solely by the Office of Court Security on a case-by-case basis in accordance with the requirement to safeguard the federal judicial process, the Judiciary, citizens, and property as per policies and directives governing Office of Court Security operations.") The contract does not, as noted, use the term "at will," but neither does it use the phrase "just cause," "good cause," or something similar.

---

[6] *See* USMS-Akal Contract § H-3(a) ("Any employee provided by the Contractor that fails to meet the CSO performance standards . . . may be removed from performing services for the Government under this Contract upon written request of the Contracting Officer."); *id.* § H-3(b) ("The United States Marshals Service reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO. . . . Any decision to continue a Contractor employee in a CSO capacity will be made solely by the Office of Court Security . . .") *id.* § H-3(c) ("The Contracting Officer and the Office of Court Security shall make the final determination of suitability.)

The factors the USMS-Akal contract requires the USMS to consider in disciplining a CSO are different than simply whether "just cause" exists. Instead, the USMS-Akal contract requires the USMS to consider factors that are, by statute, within the expertise and ultimate discretion of the USMS. *See* 28 U.S.C. § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the [federal courts]."); *id.* § 566(i) ("The United States Marshals Service retains final authority regarding security requirements for the judicial branch of the Federal Government.") The USMS-Akal contract, in other words, recognizes the USMS's statutory authority by giving the USMS considerable "discretion" to "grant or deny" a CSO the right to continued employment as a CSO. *Town of Castle Rock*, 545 U.S. at 756.

If the Court interpreted § 8.1's "just cause" requirement in the way that the Plaintiff urges—that is, as requiring *all* CSO discipline to be based on just cause, regardless of who initiates the discipline—then the USMS could be constrained from considering the factors it is required, by contract, to consider, and it could be constrained from exercising its statutory authority to make "final" decisions about court security. 28 U.S.C. § 566(i). In the absence of a clearer statement, the Court cannot interpret the CBA and the USMS-Akal contract to require the USMS to disregard its statutory authority. Because the USMS-Akal contract does not use the term "just cause" to constrain USMS discipline, there is insufficient reason to conclude that the parties intended USMS-initiated discipline to be based on concepts of "just cause."[7]

---

[7] This interpretation of the CBA and the USMS-Akal contract does not render § 8.1 of the CBA superfluous. Section 8.1's "just cause" provision still applies to cases of Akal-imposed—rather than USMS-imposed—discipline.

For these reasons, the Court concludes that the CBA's disciplinary provisions are, in substance, similar to the hybrid discipline provision at issue in another terminated CSO case, *Strolberg v. USMS*, 350 F. App'x 113 (9th Cir. 2009). In *Strolberg*, the CBA stated that "no Employee shall be dismissed or suspended without just case, unless the company is directed by the U.S. government to remove the Employee from working under the Employer's contract with the U.S. government, or if the Employee's credentials are denied or terminated by the U.S.M.S." *Id.* at 114 (emphasis omitted). The Ninth Circuit concluded that "[t]his provision creates a hybrid employment contract, with both at-will and for-cause provisions" and that, because the CSOs were terminated pursuant to the at-will provision, they "had no constitutionally protected property interest." *Id.*

The Plaintiff does not contest the Defendant's claim that, if the CBA in this case is interpreted to contain a "hybrid employment contract" like the one in *Strolberg*, and if he was terminated pursuant to the at-will component of that contract, then he has no property interest in his continued employment. Rather, the Plaintiff responds largely by relying on the Second Circuit's decision in *Stein v. Board of City of New York, Bureau of Pupil Transportation*, 792 F.2d 13 (2d Cir. 1986). As the Second Circuit noted on appeal in this case, the facts of this case "parallel those of the plaintiff" in *Stein*. *Atterbury*, 805 F.3d at 407. In *Stein*, the Second Circuit held that a bus driver had a property interest in his employment with a government contractor because his employment contract provided that he "would not be discharged except for 'good cause.'" *Stein*, 792 F.2d at 17.

However, after noting the parallels between this case and *Stein*, the Second Circuit declined to "address the impact, if any," of § 8.1's "without recourse" language on the Plaintiff's due process claim. *Atterbury*, 805 F.3d at 407 n.3. As discussed above, the

Court concludes that § 8.1's "without recourse" language, together with the rest of the CBA and the relevant provisions of the USMS-Akal contract, create a hybrid employment contract, unlike the contract at issue in *Stein*.

Finally, the Plaintiff makes a brief claim based on Executive Order (EO) 13495, *Nondisplacement of Qualified Workers Under Service Contracts*. *See* 74 Fed. Reg. 6103 (Jan. 30, 2009). EO 13495 makes it the "policy of the Federal Government that service contracts and solicitations for such contracts shall include a clause that requires the contractor . . . under a contract that succeeds a contract for performance of the same or similar services at the same location, to offer those employees . . . employed under the predecessor contract whose employment will be terminated as a result of the successor contract, a right of first refusal of employment under the contract in positions for which they are qualified." *Id.* § 1. But EO 13495 also states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against" the United States, federal agencies, or federal officers. *Id.* § 9(c). The Plaintiff does not explain how EO 13495 can give him a legitimate claim of entitlement in his job if the Executive Order expressly states that it does not create any "substantive or procedural" rights.

For all of the reasons stated above, the Court concludes that the Plaintiff was not terminated pursuant to a provision of the CBA that gave him a legitimate claim of entitlement to his job as a CSO. Rather, the USMS exercised its broad discretion to decide that, in its judgment, the Plaintiff was no longer suitable to work as a CSO. "[A] benefit is not a protected entitlement" under the Due Process Clause "if government officials may grant or deny it in their discretion." *Town of Castle Rock*, 545 U.S. at 756.

Thus, the USMS did not violate the Due Process Clause by terminating the Plaintiff as it did.

## CONCLUSION

For the reasons stated above, the Defendants' renewed motion for summary judgment (Docket No. 59) is granted in its entirety, and the Plaintiff's motion for summary judgment (Docket No. 57) is denied in its entirety. The Clerk of Court shall enter judgment for the Defendants and take all steps necessary to close this case.

**SO ORDERED.**


Dated: May 7, 2018                          _s/Richard J. Arcara_____
     Buffalo, New York                          HONORABLE RICHARD J. ARCARA
                                    UNITED STATES DISTRICT JUDGE